*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GARY GLENN; PASTOR LEVON YUILLE;
PASTOR RENÉ B. OUELLETTE; PASTOR JAMES
COMBS,

          *Plaintiffs-Appellants*,

     *v.*

ERIC H. HOLDER, JR., in his official capacity
as Attorney General of the United States,
          *Defendant-Appellee*.

No. 10-2273

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 10-10429—Thomas L. Ludington, District Judge.

Argued: January 11, 2012

Decided and Filed: August 2, 2012

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert Joseph Muise, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellants. Linda F. Thome, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert Joseph Muise, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellants. Linda F. Thome, Jessica Dunsay Silver, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Judith E. Levy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

     GWIN, D. J., delivered the opinion of the court, in which KETHLEDGE, J., joined. STRANCH, J. (pp. 10–14), delivered a separate concurring opinion.

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

OPINION

———————————

JAMES S. GWIN, District Judge.  Plaintiffs appeal the district court's decision that they do not have standing to challenge the constitutionality of the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act ("Act" or "Hate Crimes Act").  That Act makes it a crime to batter a person because of the person's religion, national origin, gender, sexual orientation, gender identity, or disability.  Generally, Plaintiffs say that the expression and practice of their anti-homosexual religious beliefs will lead to federal investigation and prosecution under the Act, in violation of their First Amendment rights.  But Plaintiffs' underlying complaint is with the government's heightened protection of homosexuals from criminal violence—this lawsuit is really a political statement against the Hate Crimes Act.[1]

We agree with the district court's determination that Plaintiffs have not demonstrated an intent to violate the Hate Crimes Act or offered sufficient evidence that they will nonetheless face adverse law enforcement action.  Accordingly, they lack standing to prosecute this case, and we **AFFIRM**.

**I.**

Plaintiffs Gary Glenn, Pastor Levon Yuille, Pastor René B. Ouellette, and Pastor James Combs say that homosexuality is "forbidden by God."  They claim they "have a [religious] obligation to state clearly the immoral nature of homosexuality" that requires them to "publicly denounce homosexuality, homosexual activism, and the homosexual agenda as being contrary to God's law and His divinely inspired Word."  And they filed this lawsuit in an unnecessary effort to ensure that the Hate Crimes Act will continue not to prohibit them from "publicly denounc[ing]" others.

———————————

[1]Plaintiffs have a (sincere, apparently) belief that the Hate Crimes Act "is all about elevating certain persons (homosexuals) to a protected class under federal law based on nothing more than their choice to have sex with persons of the same gender, while marginalizing strong religious opposition to this immoral choice."

The Hate Crimes Act was enacted by Congress and signed into law in October 2009. Pub. L. No. 111-84, Div. E, 123 Stat. 2190 (2009) (codified in scattered sections of Title 18). It provides criminal penalties for "[w]hoever . . . willfully causes bodily injury to any person . . . because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person." 18 U.S.C. § 249(a)(2)(A). The enacted statute also includes six uncodified "Rules of Construction."[2] Hate Crimes Act § 4710(1)-(6). These Rules provide generally that the Hate Crimes Act "applies to violent acts," § 4710(2); that the Act should not be construed to infringe, allow prosecution solely for, diminish, or prohibit constitutionally protected speech or conduct, § 4710(3)-(6); and that in a criminal trial for a violation of the Act, evidence of a defendant's speech or beliefs may be admitted only when otherwise admissible under the Federal Rules of Evidence, § 4710(1). The Act thus prohibits violent acts; it does not prohibit constitutionally protected speech or conduct.

Plaintiffs oppose the Hate Crimes Act. Somewhat inconsistently, they also say they oppose "crimes of violence." They say the Act will allow government officials to deem certain (*i.e.*, Plaintiffs') ideas, beliefs, and opinions as criminal and to undertake "inherently divisive" prosecutions. According to Plaintiffs, the Act's criminal provisions will deter, inhibit, and chill their speech and activities and will subject them to "increased government scrutiny, questioning, investigation, surveillance, and intimidation on account of their strong, public opposition to homosexual activism, the homosexual lifestyle, and the homosexual agenda." Plaintiffs—who, by the way, do not allege that they have been subjected to *any* government action stemming from the Hate Crimes Act—say that "[t]he enforcement history of similar 'hate crimes' legislation, the public statements of homosexual activists, and the influence of homosexual activists within the federal government demonstrate that Plaintiffs' fears of adverse enforcement action under the Act on account of their deeply held religious beliefs are credible."

---

[2]Statutes at Large have "the force of law" even if omitted from the United States Code. *Schmitt v. City of Detroit*, 395 F.3d 327, 330 (6th Cir. 2005); *see* 1 U.S.C. § 112. A statute and its uncodified provisions are construed to "work together." *In re Davis*, 512 F.3d 856, 857-58 (6th Cir. 2008).

The Attorney General moved to dismiss, arguing that Plaintiffs lack standing and that their claims were not ripe.  The district court agreed, reasoning that the Hate Crimes Act does not apply to Plaintiffs' conduct because "Plaintiffs do not allege that they intend to 'willfully cause' any 'bodily injury.'" *Glenn v. Holder*, 738 F. Supp. 2d 718, 731 (E.D. Mich. 2010).  Thus, the court concluded, there is no "credible threat of prosecution." *Id.*  Similarly, the court held that Plaintiffs' claims are not ripe because the "hypothetical situations in which they believe that they will be prosecuted or subject to investigation" are not of "substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 733.  Plaintiffs appealed.

## II.

### A.    Standard of review

We review de novo a district court's decision to dismiss for lack of subject-matter jurisdiction. *Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005).  Because Plaintiffs' "suit was dismissed at the pleading stage, we must accept as true all material factual allegations of the complaint," which we must construe in their favor. *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (internal quotation marks omitted).  Nevertheless, "standing cannot be inferred from averments in the pleadings; rather, it must affirmatively appear in the record" from "sufficient factual matter in the complaint" so as to "state a claim to relief that is plausible on its face." *Id.* at 551-52 (internal quotation marks omitted).

### B.    Standing

Federal-court jurisdiction is limited by Article III of the Constitution to "Cases" and "Controversies." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  Standing is a "core component" of the case-or-controversy requirement and requires a party invoking federal jurisdiction to establish, among other things, "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted).  "Since this case deals with declaratory and injunctive

relief, a pre-enforcement challenge may be made before the actual completion of an injury in fact." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). However, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and that there "exists a credible threat of prosecution thereunder." *Johnson v. Turner*, 125 F.3d 324, 337 (6th Cir. 1997) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

In addition, when a statute is alleged to be overly broad in violation of the First Amendment, the standing rules are relaxed to allow plaintiffs "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)) (internal quotation marks omitted).

In this case, Plaintiffs could establish standing by showing that they intend to violate the Act or that the Act chills their constitutionally protected conduct. But they don't.

### 1.    Plaintiffs have not alleged that they intend to violate the Act

Quite simply, we agree with the district court that Plaintiffs have not established standing because they have not alleged any actual intent to "willfully cause[] bodily injury," the conduct proscribed by the Act. 18 U.S.C. § 249(a)(2)(A). To the contrary, Plaintiffs explicitly denounce "[a]ll crimes of violence perpetrated against innocent individuals," and say that "[p]ersons who commit violent criminal acts, regardless of the 'bias' or motive for the crime, are *rightfully* subject to severe criminal penalties . . . under existing State criminal law." Plaintiffs say they want no more than to "publicly denounce homosexuality" and "spread God's Word" based on their interpretation of the Bible, without engaging in unprotected forms of expression such as "fighting words," "true threats," or "advocacy [that] is directed to inciting or producing imminent lawless action," *Virginia v. Black*, 538 U.S. 343, 358-59 (2003).

The Act does not prohibit Plaintiffs' proposed course of speech. "[T]he term 'bodily injury' . . . does not include solely emotional or psychological harm to the victim," 18 U.S.C. § 249(c)(1), and the legislative history shows that the term "violent acts" (not defined in the Act itself) is not intended to include "violent thoughts," "expressions of hatred toward any group," or "the lawful expression of one's deeply held religious or personal beliefs." H.R. Rep. No. 111-86, at 16 (2009).[3] Moreover, Plaintiffs provide no legal authority for the proposition that constitutionally protected speech—that is, other than "fighting words," "true threats," or "advocacy [that] is directed to inciting or producing imminent lawless action," *Black*, 538 U.S. at 358-59—is a "violent act[]" that "causes bodily injury." We looked; there isn't any.

Which probably explains why Plaintiffs can't quite pinpoint what it is they want to say that could subject them to prosecution under the Hate Crimes Act. They try, for example, when they hypothesize that they might be subject to enforcement actions for quoting Biblical references to homosexuality, but even there only one such quotation contains any suggestion of "bodily injury." That's Leviticus 20:13—"If a man also lie with mankind, as he lieth with a woman, both of them have committed an abomination: they shall surely be put to death; their blood shall be upon them." Whatever meaning Plaintiffs attribute to this passage, they have not alleged any intention to do more than merely quote it. About that, the Hate Crimes Act has nothing to say.

That Plaintiffs challenge the breadth of the statute adds nothing to their standing. It is true that overbreadth challenges may rely on the rights of "others not before the court." *Prime Media, Inc.*, 485 F.3d at 348. But the burden rests on Plaintiffs to demonstrate that a "substantial number of instances exist in which the law cannot be

---

[3]The House Committee on the Judiciary reported:

The bill has been crafted in a fashion that fully protects first amendment and other constitutional rights. The bill is designed only to punish violent acts, not beliefs or thoughts—even violent thoughts. The legislation does not punish, nor prohibit in any way, name-calling, verbal abuse, or expressions of hatred toward any group, even if such statements are hateful. Moreover, nothing in this legislation prohibits the lawful expression of one's deeply held religious or personal beliefs. The bill only covers violent actions that result in death or bodily injury committed because the victim has one of the specified actual or perceived characteristics.

*Id.*

applied constitutionally." *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009). And here "the record is utterly barren about whether some, many, indeed any, [other religious leaders] are affected by this proposed application of the statute." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 338-39 (6th Cir. 2009) (en banc). Without an allegation of any such person or group, a court cannot conclude that the Act threatens to undermine a substantial number of them. *See N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988).

So why are Plaintiffs here? If the Hate Crimes Act prohibits only willfully causing bodily injury and Plaintiffs are not planning to willfully injure anybody, then what is their complaint? Plaintiffs answer that they fear wrongful prosecution and conviction under the Act. Not only is that fear misplaced, it's inadequate to generate a case or controversy the federal courts can hear.

Plaintiffs suggest that they might be convicted as aiders and abettors should others find criminal inspiration in their proselytization. Title 18, United States Code, Section 2, it is true, "decrees that those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994). But as with the underlying offense here, aiding and abetting requires a defendant's participation in a crime to be "willful," which means "voluntarily and intentionally and with the specific intent to do something which the law forbids . . . that is to say, with bad purpose either to disobey or disregard the law." *United States v. Brown*, 151 F.3d 476, 486 (6th Cir. 1998); *see also United States v. Davis*, 306 F.3d 398, 412 (6th Cir. 2002) (defendant must have "an intention to aid in the commission of the crime"). Just as Plaintiffs have not alleged any actual intent to cause bodily harm themselves (quite the opposite), they have also failed to allege any intent to facilitate the causation of bodily harm by others. Without that, even Plaintiffs' failure to exercise "exquisite care regarding the persuasive power of the violent material that they disseminate[]" falls short of the actual "inten[t] to produce violent actions" the Act requires. *James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir. 2002).

In the end, Plaintiffs are correct that they "cannot grant themselves immunity from prosecution under the Hate Crimes Act by simply claiming that they did not in fact intend to cause (willfully or otherwise) bodily injury by their conduct." A jury may not believe them, and "intent may be inferred from the totality of circumstances." *United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002) (internal quotation mark omitted). Plaintiffs are also correct that the Rules of Construction do not prohibit the introduction into evidence of a defendant's "speech, beliefs, association, group membership, or expressive conduct" when otherwise admissible under the Federal Rules of Evidence. Hate Crimes Act § 4710(2). However, Plaintiffs point to no case in which mere expression of religious beliefs—even those in accordance with Leviticus 20:13 or similar passages—was found to establish such intent. Similarly, Plaintiffs cite no authority for the proposition that the possibility of an erroneous conviction makes a criminal statute unconstitutional. Obviously, it does not. Plaintiffs lack standing.[4]

### 2. Plaintiffs have not alleged any credible threat of prosecution for lawful activity

Plaintiffs also argue that they are faced with a "chilling effect" on their protected activity from the threat of enforcement of the Act. That chill, Plaintiffs say, comes from a combination of "a vocal group of homosexual activists in Michigan" and from supposedly supportive federal prosecutors. Plaintiffs say they have "set forth *specific* instances in which they have been accused of engaging in [conduct proscribed by the Act] by the very 'community' the Act was intended to protect." These instances consist of several undated quotes by various people and organizations which generally accuse Plaintiffs and other homosexuality opponents of supporting or promoting violence through their religious messages. Of course, these comments say nothing about

---

[4]Plaintiffs also attempt to extend the conduct prohibited by 18 U.S.C. § 249(a)(2)(A) by selectively drawing from other, uncodified sections of the Hate Crimes Act. In particular, Plaintiffs cite the Rule of Construction in § 4710(3), which, they say, "*permit[s]* the prosecution of 'speech' that the Attorney General believes will 'incite an imminent act of physical violence against another' or involves 'planning for, conspiring to commit, or committing an act of violence.'" We do not agree with Plaintiffs' tortured reading of the Act. Moreover, there is nothing about the actual statutory language that purports to criminalize any particular type of conduct. *See Hoffman v. Hunt*, 126 F.3d 575, 582 (4th Cir. 1997) (observing that a rule of construction limiting the scope of a statute "prohibits nothing").

Plaintiffs' actual intent, what the Act says, or how the Act might be applied to Plaintiffs by those with actual authority to implement it.

And conspicuously absent from Plaintiffs' allegations is any express (or even implied) threat of official enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for the type of conduct they seek to practice: there is nothing that *objectively* supports "a credible threat of prosecution." *Johnson*, 125 F.3d at 337; *see Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). The same is true of Plaintiffs' claim that the Hate Crimes Act will subject them to adverse law enforcement action short of prosecution, such as investigation and surveillance: they have presented no actual facts to support an assertion that the government has taken or intends to take any investigatory actions under the Act against those merely engaging in protected speech. *See Laird*, 408 U.S. at 13-14.

Plaintiffs fail to satisfy their burden to show that their intended conduct creates a credible threat of prosecution to themselves or anyone else that is concrete, actual, or imminent. *Lujan*, 504 U.S. at 560; *Johnson*, 125 F.3d at 337. Accordingly, they do not have standing to challenge the Act.

### III.

For the reasons above, we **AFFIRM** the judgment of the district court dismissing Plaintiffs' complaint for lack of jurisdiction.

———————————————

**CONCURRENCE**

———————————————

JANE B. STRANCH, Circuit Judge, concurring. I concur with the holding of the court that Plaintiffs lack standing to challenge the Hate Crimes Act because they have not alleged that they intend to violate it or that there is an objectively reasonable threat of enforcement. I write separately to address Plaintiffs' attempts to support their claim that the Act unconstitutionally chills their speech based on two sources: legislative history and statements by federal prosecutors. I begin with the caveat that I find resort to these sources unnecessary: the statute itself and its Rules of Construction are clear. However, because much ink and many words have been spilled on these arguments, explanation of why they are plainly without merit is called for.

## I.     Legislative history

In order to help meet their standing burden, Plaintiffs attempt to use legislative history to demonstrate that the Hate Crimes Act was "aimed directly" at them. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988). Analysis of the legislative history leads to the opposite conclusion.

First, Plaintiffs quote without citation Rep. Sheila Jackson Lee: "We also need to protect those potential victims who may be the recipients of hateful words or hateful acts, or even violent acts." Despite Plaintiffs' failure to note an alteration in the text, this quotation actually begins mid-sentence in a discussion focused on the narrow issue of whether to use the word "gender" or "sex" in the bill. *Markup Before the H. Comm. on the Judiciary*, 111 Cong. (2009) (statements of Rep. Sheila Jackson Lee), 2009 WL 1102023, at \*7.[1]  In context, the quoted language is not significant to the issue in this

---

[1] Rep. Jackson Lee's full statement is as follows:
I think that the gentlelady has analyzed it [the distinction between "gender" and "sex"] very eloquently. But I would also add that the premise of this—underlying premise of the bill is to thwart discrimination or hateful acts. I think the utilization of the term gender allows us to ensure that a definition is not narrow, but that it represents the elements that might be discriminated against or might have the unfortunate results of having hateful acts perpetrated against them on the basis of the term gender.

case because the Congresswoman was discussing *who* would be protected rather than *from what* they should receive protection. Plaintiffs further distort this quotation in the following explanatory parenthetical in their reply brief: "(claiming that the Act "protect[s] those potential victims who may be the recipients of hateful words)." (Alteration in brief). Even taken out of its situational context, the omitted use of the words "need to" before this language make clear that any such protection was merely aspirational for the speaker rather than a statement of what the Act actually does.[2]

Second, also without citation, Plaintiffs assert that an unnamed "congressional supporter" of the Act responded in the negative to the following question: "[I]f a minister preaches that sexual relations outside of marriage of a man and woman is wrong, and somebody within that congregation goes out and does an act of violence, and that person says that that minister counseled or induced him through the sermon to commit that act, are you saying under your amendment that in no way could that ever be introduced against the minister?" However, this purported legislative history occurred in 2007 regarding an amendment to an earlier version of the legislation.[3] *Markup of H.R. 1592*, *The "Local Law Enforcement Hate Crimes Prevention Act of 2007: Hearing Before the H. Comm. on the Judiciary*, 110 Cong. 206 (2007) (statements of Reps. Louie Gohmert and Artur Davis). Moreover, the surrounding passages reveal that this discussion related to an evidentiary issue, not the scope of conduct proscribed by the bill.

A more thorough review of the legislative history reveals that Congress did, in fact, have individuals such as Plaintiffs in mind when it passed the Hate Crimes Act.

---

So I do think that if we are to adhere to your principles of modernizing, using a term that we are familiar with, we also need to protect those potential victims who may be the recipients of hateful words or hateful acts or even violent acts. And I think that the amendment would diminish the legislation and take it away from what it is supposed to be, which is to address the question of hate crimes in America.

*Id.*

[2] In my attempt to locate the source of this quotation, I observed that it appeared in various webpages and blogs similarly out of context and without citation. Briefs must adhere to a different standard. *See United States v. Bridgewater*, 479 F.3d 439, 443 (6th Cir. 2007).

[3] Although similar, that version of the bill did not contain the "violent acts" provision or many of the specific First Amendment protections listed in the Hate Crimes Act. H.R. 1592, 110th Cong. (2007).

And it intended to protect their constitutional expression of religious beliefs. *See* H.R. Rep. No. 111-86, at 16 (2009). Thus, I find no evidence in the legislative history arguments offered that the Act was "aimed directly" at religious leaders such as Plaintiffs.

## II.     Enforcement

Plaintiffs also argue that the "chilling effect" of the Hate Crimes Act stems from statements made by federal prosecutors and the Attorney General: "[T]he Attorney General and his loyal prosecutors in Michigan . . . have publicly abandoned their neutrality and become themselves activists with an agenda" to prosecute or otherwise oppress Plaintiffs. In support of this bold accusation, Plaintiffs cite statements by two Assistant United States Attorneys noting that their office is "eager to bring cases under this [A]ct" and "open for business in enforcing and defending the Hate Crimes Prevention Act,"[4] as well as a quotation by Attorney General Eric Holder that the Act is "a great tool for the Justice Department" which will "improve the quality of life for . . . gay and lesbian Americans."

These statements provide no support for Plaintiffs' arguments. Conspicuously absent from these allegations are any express (or even implied) threats of enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for their proposed religious speech. In fact, the comments from these officials do not even mention religious leaders, let alone suggest enforcement as to them.

To the contrary, Attorney General Holder testified before the Senate that he believes the type of conduct intended by Plaintiffs is *not* proscribed by the Hate Crimes Act:

> The minister who says negative things about homosexuality, about gay people, this is a person I would not agree with but is not somebody who would be under the ambit of this statute. The person who actually committed the physical act of violence would be the person—assuming

---

[4]These statements are contained in an article which was written after the complaint was filed and discusses this case.

that all the jurisdictional requirements were met, it is the person who commits the actual act of violence who would be the subject of this legislation, not the person who is simply expressing an opinion. . . . [W]e're looking at people who actually commit physical acts of violence . . . .

*The Matthew Shepard Hate Crimes Act of 2009: Hearing Before the S. Comm. on the Judiciary*, 111th Cong. 13 (2009). Plaintiffs respond to this testimony by dismissing it as beyond the statute itself: "This court's review of the Hate Crimes Act must focus on the language chosen by Congress and not the Attorney General's improper interpretation and application of that language." But substantial parts of Plaintiffs' arguments—including this one—are based on statements of those charged with effectuation of the Act.

Further, it is undeniable that the position taken by the Attorney General, who is charged with enforcing this Act and is the defendant in this litigation, is germane. Sitting en banc in another pre-enforcement challenge with a "law-enforcement vacuum," we gave weight to the government's assertion that "it has no intention of enforcing the law in this setting—as proved by the fact that the Attorney General, a *party* to this case and the sole defendant in it, has taken the position that the statute does not apply to [the conduct in question]." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 339 (6th Cir. 2009) (en banc) (quotation marks omitted). To the extent that we may consider the government's own stated enforcement positions, it is also worth nothing that the United States Attorneys' Manual contains a specific provision that federal prosecutors should not make "prosecution or declination decisions based solely upon a such person's [sic] affiliation with any group advocating for or against rights of persons with the characteristic identified by statute" when enforcing the Hate Crimes Act. § 8-3.300 (2009).

Thus, I find wholly groundless Plaintiffs' claim that statements made by federal prosecutors and the Attorney General constitute threats of enforcement of the Hate Crimes Act against religious leaders for their religious speech.

The protection of religious speech is a bulwark built by our Constitution for the purpose of guarding a foundational right. But the safeguards provided by that bulwark include standards not only for laws that are enacted but also for those who seek to litigate the propriety of those laws. Both matter. Because Plaintiffs have neither alleged that they intend to violate the Hate Crimes Act nor offered sufficient evidence to *objectively* justify a reasonable fear of enforcement, I must conclude that they lack standing to bring this pre-enforcement challenge.