NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0590n.06

No. 12-1110

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 21, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLIAM LANGFAN, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellant, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| v. | ) | |
| | ) | |
| THE GOODYEAR TIRE & RUBBER CO.; | ) | OPINION |
| FRANK BALLO; DAVID O'DONNELL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before:  NORRIS, GIBBONS, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  This appeal arises from a suit by a commercial property owner alleging procedural due process violations resulting from the Michigan Department of Environmental Quality's decision to issue a No Further Action letter to the lessee of his property.  The district court dismissed the case because the plaintiff failed to specify a protected property interest at stake; in addition, the court determined that there was no discernible deprivation arising from the issuance of the letter.  That determination on the merits, however, was improper because the trial court lacked jurisdiction.  We conclude that the plaintiff did not have standing to prosecute his claims.  Therefore, we **VACATE** the decision of the district court below and **REMAND** with instruction to dismiss this case for lack of subject-matter jurisdiction.

I.

William Langfan owns commercial property in Benton Township, Michigan. From 1987 to 2010, Goodyear leased space on this property for the purpose of operating an auto service center. When Langfan attempted to sell the property in 2004, an investigation revealed that the property was contaminated with various hazardous substances. Goodyear, as the operator of the premises, took responsibility for the contamination and began conducting response activities pursuant to Part 201 of Michigan's Natural Resources and Environmental Protection Act (MNREPA). Because of the extant contamination, the property was considered a "facility" for purposes of Part 201 of the MNREPA. During this time, the department now known as the Michigan Department of Environmental Quality (MDEQ) oversaw Goodyear's remedial efforts.

In 2008, Langfan filed a state court suit against Goodyear seeking damages under Goodyear's lease obligations for undue waste, failure to return the property in substantially the same condition as when it was first leased, and indemnification of the cost of the response activities shouldered by Langfan. Langfan's MNREPA claims were dismissed in 2011; a bench trial took place on the remaining claims. According to representations at oral argument, Langfan ultimately prevailed.

In light of consultant data finding reduced levels of contamination, Goodyear approached Frank Ballo of MDEQ about the possibility of obtaining a No Further Action (NFA) letter with respect to the Benton Township property.

In 2009, Goodyear formally applied for an NFA letter. An NFA letter serves as a statement by MDEQ that, "based on information provided by a responsible party, a particular [s]ite has been adequately remediated under [MNREPA], and that no further remedial action is presently required."

No statute specifically governed the process of issuing NFA letters; "their issuance was a discretionary practice of the MDEQ."

> On January 26, 2010, MDEQ issued the requested letter. It read, in pertinent part:
>
> Based upon the information and representations in the Summary Report and other submittals, the Goodyear Auto Service Center #6145, 1925 Pipestone Road, Benton Harbor, Berrien County, Michigan, has been addressed and does not require further remediation.
>
> The [MDEQ] has not made a determination regarding full compliance with the Part 201 Administrative Rules effective December 21, 2002. The [MDEQ] expresses no opinion as to contaminants beyond those identified and remediated as part of the representations submitted.

Langfan did not receive notice as to whether MDEQ was considering issuance of such a letter.

> Upon learning of the letter's existence, Langfan wrote to Ballo and David O'Donnell, Ballo's supervisor, asking if the letter "constitute[d] an administrative action of any type whatsoever concerning the Property." In addition, he inquired as to whether the letter had "any legally binding, or any legally substantive [e]ffect whatsoever on [his] legal rights under any Michigan Law whatsoever concerning the contamination." O'Donnell, the district supervisor, responded by explaining:
>
> This determination by [MDEQ did] not constitute an administrative action or legally binding effect matter under Part 201 or the Part 201 Rules, nor [did] it constitute a final agency decision under Part 11, General Appellate Rights and Public Access to Government, of the NREPA. Instead, it represents [MDEQ's] technical determination that documentation in its file indicates response activities conducted by Goodyear at the Property have been sufficient and the [MDEQ] is not requesting additional remediation activities at the facility.

Unsatisfied with O'Donnell's response and armed with his own consultant reports, Langfan requested that MDEQ rescind the NFA letter. O'Donnell declined. Goodyear used the letter to defend itself in Langfan's state court action.

After the rejection and during the pendency of the bench trial in state court, Langfan attempted to amend his state court complaint to challenge the NFA letter on due process grounds. The trial court denied the motion to amend. Langfan then filed suit in district court under 42 U.S.C. § 1983, alleging that Ballo and O'Donnell deprived Langfan of his due process rights by failing to provide notice and an opportunity for a hearing regarding the issuance of the NFA letter. In addition, he alleged that Goodyear's use of the letter in state court constituted abuse of process.

The district court dismissed all of Langfan's claims. With respect to Langfan's due process allegations, the court concluded that Langfan failed to show that "MDEQ deprived [Langfan] of any constitutionally protected property right by issuing the NFA." The district court noted that "[t]he NFA did not cause the petroleum contamination, and thus did not cause any encumbrance on [Langfan's] title." The court also concluded that dismissal of the abuse of process claim was warranted because "MDEQ's consideration and issuance of an NFA is not 'legal process,' and thus not subject to an abuse of process tort." The use of the NFA letter in state court litigation, the district court observed, was "nothing more than zealous advocacy." This appeal timely followed.

II.

Standing is a "bedrock requirement" of federal jurisdiction. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Therefore, we are

obligated to address a party's lack of standing even if the parties fail to raise the issue on their own. *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012).

The modern standing doctrine requires three things of a plaintiff: (1) an injury-in-fact that is "concrete and particularized," and "actual or imminent, not 'conjectural or hypothetical,'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); (2) a fair amount of traceability between that injury and the "challenged action of the defendant"; and (3) a likelihood, as opposed to mere speculation, that "the injury will be redressed by a favorable decision," *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

Here, Langfan has asserted two injuries-in-fact—an impairment to his title resulting from the contamination of his land, as well as the undesirable "facility" designation under MNREPA. He has also identified an agency action that he feels is responsible—MDEQ's issuance of the NFA letter. What is missing, however, is "sufficient factual matter" that establishes a causal link between the two. *See Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012) (internal quotation marks and citation omitted). Even if MDEQ declined to issue the letter, Langfan's title would have been just as impaired and his property would still be a "facility" under MNREPA. In other words, nothing would have changed. The NFA letter was akin to a status update, indicating that the agency would not be taking an affirmative action against Goodyear at that time. Because Langfan has not factually demonstrated a causal link between the alleged injuries and the challenged act of issuing the NFA letter, his claims lack the traceability and redressability that Article III demands.

Langfan also suggests that the NFA letter caused an injury because Goodyear used the letter to defend itself in the state-court suit. Such an assertion cannot be the basis for Article III standing.

The "considerable cost" Langfan expended to rebut the effect of the NFA letter in prosecuting his state-court claims is irrelevant for jurisdictional purposes—the injury must be "independent of the costs of litigation." *See Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 F. App'x 469, 475 (6th Cir. 2006). In short, he has failed to satisfy the "irreducible constitutional minimum of standing." *See Lujan*, 504 U.S. at 560.

III.

As Langfan lacks standing, we cannot reach the merits of his claims. We also have no need to consider whether the district court erred by failing to convert the motion that disposed of this case, as the proper course of action was to dismiss this case *sua sponte* for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *cf. Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). We therefore **VACATE** the district court's opinion and order of January 3, 2012, and **REMAND** with instruction to dismiss for lack of subject-matter jurisdiction.