**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0588n.06**

**No. 18-3270**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PLUNDERBUND MEDIA, L.L.C; JOHN MICHAEL SPINELLI; and PORTAGE COUNTY TEA PARTY, INC., | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | **FILED**<br>Nov 27, 2018<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) ) | |
| MIKE DEWINE, in his official capacity as Ohio Attorney General; VICTOR V. VIGLUICCI, in his official capacity as the Prosecuting Attorney for Portage County, Ohio; and RON O'BRIEN, in his official capacity as the Prosecuting Attorney Franklin County, Ohio, | ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO<br><br>OPINION |
| Defendants-Appellees. | ) ) | |

**BEFORE:** **MERRITT, DAUGHTREY, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** For decades, Ohio has prohibited making a "telecommunication . . . with purpose to abuse, threaten, or harass another person" under Ohio Rev. Code § 2917.21(B). In August 2016, a new section of the law went into effect that specifically prohibited posting on the internet "for the purpose of abusing, threatening or harassing another person." Ohio Rev. Code § 2917.21(B)(2). Plaintiffs—online blog Plunderbund Media, blogger John Spinelli, and the nonprofit organization Portage County TEA Party—allege that the purpose requirements of § 2917.21(B)(2) and the preexisting telecommunications harassment section are unconstitutionally overbroad. Plaintiffs allege that because they do not fit a statutory

exemption for mainstream media entities, they face a credible threat of prosecution for their online articles and posts criticizing elected officials, including Defendants, Ohio Attorney General Mike DeWine, Portage County Prosecuting Attorney Victor Vigluicci, and Franklin County Prosecuting Attorney Ron O'Brien. Finding that Plaintiffs had not suffered any pre-enforcement injury-in-fact, the district court dismissed the case for lack of standing. For the reasons that follow, we **AFFIRM**.

## I.    BACKGROUND

Plunderbund Media is an Ohio corporation that publishes an internet blog that focuses on Ohio and national politics and has used "humor and ridicule to make its rhetorical points" since at least 2013. (R. 1, ¶ 4, PageID 2.) Spinelli is a resident of Ohio who formerly blogged for Plunderbund and is now an independent blogger; he asserts that since 2006, he has written "thousands of articles" on online platforms that "could be considered abusive or harassing both by the subjects of [his] commentary and by county prosecutors." (*Id.*, ¶ 5, PageID 3; R. 2-4, PageID 42.) Portage County TEA Party is an Ohio nonprofit political organization suing on behalf of its members, "political activists and commentators" who engage in political discussion online. (R. 1, ¶ 6, PageID 3.) Plaintiffs' online posts routinely use "invective, ridicule and strong language intended to mock, lampoon or call into question the actions, motives and public policy positions of various figures," including elected prosecutors such as DeWine, O'Brien, and Vigluicci. (*Id.*, ¶¶ 7–9, 14, PageID 3–4.)

In April 2016, the Ohio legislature passed a law updating the state's longstanding telecommunications harassment statute, Ohio Rev. Code § 2917.21(B), to provide:

> No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

*Id.* § 2917.21(B)(2). This section, which we refer to as the cyber-harassment statute, became effective August 16, 2016. The older telecommunications harassment section was renumbered as § 2917.21(B)(1) and provides, as it has since 1999:

> No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

*Id.* § 2917.21(B)(1). "Telecommunication" is defined as "the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." *Id.* § 2913.01(X). Neither §§ 2917.21(B)(1) nor (B)(2) applies to employees or contractors of a "newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station," under the so-called mainstream media exemption. *Id.* § 2917.21(F). Violating either section results in a first degree misdemeanor on a first offense, punishable by a fine of up to $1,000 and imprisonment of no more than six months, and a fifth degree felony on each subsequent offense, punishable by a fine of up to $2,500 and imprisonment of between six and twelve months. *Id.* § 2917.21(C)(1).

On May 16, 2017, Plaintiffs filed a complaint challenging § 2917.21(B)(2) under the First and Fourteenth Amendments, along with a motion for a preliminary injunction. Plaintiffs allege that the prohibition against posting with abusive or harassing purpose is overbroad, though they do not challenge the prohibition on posting with threatening purpose. Plaintiffs also challenge the constitutionality of the matching "purpose" provision of the older telecommunications harassment statute, § 2917.21(B)(1), to the extent it prohibits abusing and harassing speech "said to the public about a person, rather than directly to the person." (R.1, ¶ 3, PageID 2.) Although both counts of

Plaintiffs' complaint refer only to § 2917.21(B)(2), the prayer for relief includes both §§ 2917.21(B)(1) and (B)(2). Plaintiffs request: Count One, a declaration that § 2917.21(B)(2) is overbroad in violation of the First and Fourteenth Amendments, and Count Two, a grant of injunctive relief preventing Defendants DeWine, O'Brien, and Vigluicci, in their official capacities, from enforcing the abuse and harassment components of the statute. Plaintiffs assert that they do not qualify for the mainstream media exception and thus fear criminal prosecution "should police or prosecutors believe their posts were written with the purpose of abuse or harassment." (*Id.*, ¶¶ 15, 19, PageID 5.) While Plaintiffs do not allege that they seek to violate the law by posting online with the purpose to abuse or harass, they believe that under Ohio law, their "public criticism of government officials could, under the contested statute, be subject to criminal prosecution and punishment if they are seen as intended 'to mistreat' or to persistently annoy." (*Id.*, ¶ 26, PageID 7.)

Defendants moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. The district court granted the motion under Rule 12(b)(1), finding Plaintiffs did not establish an injury-in-fact and thus did not have standing to challenge the statute.

## II. ANALYSIS

"A determination of a party's standing to maintain an action is a question of law that this court reviews *de novo*." *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995). Because Plaintiffs' "suit was dismissed at the pleading stage, we must accept as true all material factual allegations of the complaint" and construe them in Plaintiffs' favor. *Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012) (quoting *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010)).

## A. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies." U.S. Const. art. 3, § 2. The standing doctrine "gives meaning to these constitutional limits by 'identif[ying] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus* (*SBA List*), 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs must show that they have suffered "an 'injury in fact' that is 'fairly traceable to the challenged action of the defendant' and is capable of being 'redressed' by the court." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61), *cert. denied*, 137 S. Ct. 1229 (2017). The issue on appeal is whether Plaintiffs have shown an injury-in-fact.

Plaintiffs have not been charged with violating § 2917.21(B)(2) and instead seek injunctive relief through "a pre-enforcement challenge[, which] may be made before the actual completion of an injury in fact." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). "To establish standing for a free-speech claim, the Plaintiffs generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.'" *Phillips v. DeWine*, 841 F.3d 405, 415 (6th Cir. 2016) (quoting *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015)), *cert. denied sub nom. Tibbetts v. DeWine*, 138 S. Ct. 301 (2017). Plaintiffs must also show that the "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *SBA List*, 134 S. Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Thus, in the pre-enforcement context, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Assuming without deciding that Plaintiffs have alleged an intention to engage in constitutionally protected conduct arguably proscribed by § 2917.21(B)(2), we examine whether Plaintiffs sufficiently alleged a credible threat of prosecution that is "not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Plaintiffs need only support their claim of a credible threat of prosecution with general factual allegations, "for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *White*, 601 F.3d at 551 (quoting *Lujan*, 504 U.S. at 561). Upon a motion to dismiss for lack of subject matter jurisdiction, the trial court may also allow or require "the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Thereafter, the motion to dismiss should be granted if "plaintiff's standing does not adequately appear from all materials of record." *Id.* at 502. In determining that Plaintiffs did not establish an injury-in-fact, the district court examined Plaintiffs' declarations supporting their motion for a preliminary injunction and both parties' briefing on Defendants' motion to dismiss. We now turn to the record to determine whether a credible threat of prosecution exists. *See id.*

1.     Credible Threat of Prosecution

"[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *SBA List*, 134 S. Ct. at 2342 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). However, in the free speech context, where "some other indication of imminent enforcement" is lacking, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay*, 823 F.3d at 868–69 (quoting *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)). Thus, when plaintiffs rely on allegations of subjective

chill, they must also "point to some combination of the following factors" to show the potential of enforcement:

> (1) a history of past enforcement against the plaintiffs or others, *see, e.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015); (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct, *see, e.g.*, *Kiser v. Reitz*, 765 F.3d 601, 608–09 (6th Cir. 2014); *Berry*, 688 F.3d at 297; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action, *see Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014).

*Id.* at 869. We may also take "into consideration a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.*; *see also Platt*, 769 F.3d at 452, *Kiser*, 765 F.3d at 609.

Plaintiffs pled that they reasonably fear prosecution under § 2917.21(B)(2) and, as a result, have been subjectively chilled regarding the content of their publications. We therefore examine the *McKay* factors relevant here: a history of past enforcement, an attribute of the statute that makes enforcement easier or more likely, and evidence of intention to enforce.

### a. History of Enforcement

"A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser*, 765 F.3d at 609. The Supreme Court's decision in *SBA List* grew out of a challenge to an Ohio prohibition on knowingly or recklessly making false statements about a candidate during a campaign. 134 S. Ct. at 2338. The plaintiffs' pleadings described the specific campaign statements plaintiffs intended to make. *Id.* at 2343. Noting that the Ohio Elections Commission had "already found probable cause to believe that [one plaintiff] violated the statute" by making "the same sort of statement," the Court concluded that "there is every reason to think that similar speech in the future will result in similar proceedings, notwithstanding [plaintiff's] belief in the truth of its allegations." *Id.* at 2345. The

Court held that the plaintiffs faced a credible fear of prosecution based on the history of enforcement. *Id.* Analogously, this court found that a dentist challenging a state dental board regulation sufficiently alleged a credible threat of prosecution because he specifically pled that he intended to advertise his practice in a manner that the dental board had already warned him may violate the regulation. *Kiser*, 765 F.3d at 605, 609.[1] We found "harm sufficient to justify pre-enforcement review" because the dental board had sent the plaintiff two letters warning that he was in violation of the regulations. *Id.* at 609 (quoting *SBA List*, 134 S. Ct. at 2345). The letters, we concluded, "may fairly be read to threaten implicitly enforcement of the regulations." *Id.*

We first ask whether Plaintiffs themselves have received comparable threats of prosecution. Plaintiffs describe many years of posting political articles and comments online but do not allege that the recently enacted cyber-harassment law, § 2917.21(B)(2), has ever been enforced, or threatened to be enforced, against them. Plunderbund has published articles critical of DeWine and other public officials since at least 2013. Spinelli avers that since 2006, he has written "thousands of stories" about elected officials, including county prosecutors, that "could be considered abusive or harassing." (R. 2-4, PageID 42.) The executive director of Portage County TEA Party, Tom Zawistowski, declared that the organization has "repeatedly characterized the Ohio Republican Party as . . . 'a money laundering organization' . . . [that uses] 'Mafia like tactics to control elections and raise money.'" (R. 2-2, PageID 36.) Zawistowski also asserted that he broadcasts "highly critical" opinions on a radio show he hosts. (*Id.*) Yet, since § 2917.21(B)(2) came into effect in August 2016, no Plaintiff has faced prosecution or threats of prosecution under the new subsection.

---

[1] After the dental board revoked the contested regulation in 2016, the district court dismissed the case as moot. We affirmed. *Kiser v. Kamdar*, No. 17-4041, 2018 WL 4958492, at *1–*3 (6th Cir. Oct. 15, 2018).

We also consider whether the longstanding telecommunications harassment law, § 2917.21(B)(1), has ever been enforced against Plaintiffs. That history is relevant to Plaintiffs' pre-enforcement challenge to § 2917.21(B)(2) because the statute has been in effect for decades, encompasses online posts, and has a "purpose" requirement nearly identical to that of § 2917.21(B)(2). The telecommunications harassment statute—then numbered § 2917.21(B)— initially prohibited telephone calls made "with purpose to harass" and "without purpose of legitimate communication." Ohio Rev. Code § 2917.21(B) (1972). The statute was amended in 1981 to read, "No person shall make or cause to be made a telephone call . . . with purpose to abuse, threaten, annoy, or harass another person." *Id.* § 2917.21(B) (1981). Finally, the 1999 version of the law dropped the word "annoy" and substituted for "telephone call" the much broader term "telecommunication." *Id.* §§ 2917.21(B) (1999), 2917.21(G)(3), 2913.01(X). Since at least 2008, Ohio courts have found that definition of telecommunication to encompass posts on the internet. *See State v. Klingel*, 88 N.E.3d 455, 462–63 (Ohio Ct. App. 2017) (finding that a post on the social media website Facebook is a telecommunication); *State v. Dundics*, 62 N.E.3d 1013, 1014–15 (Ohio Ct. App. 2016) (same); *State v. Ellison*, 900 N.E.2d 228, 229–30 (Ohio Ct. App. 2008) (finding that a post on the social media website MySpace is a telecommunication). Because § 2917.21(B) and § 2917.21(B)(2) include the same prohibition, a history of prosecution or lack of prosecution under the former statutory provision is relevant.

Plaintiffs' many years of online posts and Zawistowski's radio comments would have "expose[d] them to prosecution and/or the threat of prosecution" under the prior statute. (R. 1, ¶ 16, PageID 5.) But Plaintiffs do not allege a history of prosecution for telecommunications harassment. Spinelli alleges one instance of political retaliation when he was denied access to Ohio Governor John Kasich's 2014 State of the State address in part because he was a blogger for

Plunderbund. But denial of a press pass to a political event does not rise to the level of a criminal prosecution under the telecommunications harassment statute. Spinelli, moreover, has not plausibly alleged that the denial was premised on § 2917.21(B) such that it "may fairly be read to threaten implicitly enforcement of the regulations." *Kiser*, 765 F.3d at 609. Instead of providing examples of threats of prosecution, Plaintiffs speculate that "even public criticisms of government officials could, under the contested statute, be subject to criminal prosecution and punishment if they are seen as intended 'to mistreat' or to persistently annoy." (R. 1, ¶ 26, PageID 7.) Plaintiffs have made no factual allegations supporting that conclusion. Because "there is every reason to think that similar speech in the future will result in similar proceedings," and Plaintiffs have never been prosecuted for their critical articles and posts, Plaintiffs' future posts are unlikely to result in prosecution under the challenged statutes. *SBA List*, 134 S. Ct. at 2345.

This *McKay* factor also looks to a history of enforcement—of either subsection—against other speakers. "[P]ast enforcement [of a statute] against the same conduct is good evidence that the threat of enforcement is not chimerical." *Russell*, 784 F.3d at 1049 (6th Cir. 2015) (quoting *SBA List*, 134 S. Ct. at 2345). Plaintiffs do not point to a single case where an entity or individual posting a political opinion or article online was prosecuted for telecommunications harassment or cyber-harassment. In fact, Plaintiffs acknowledge that "no Ohio appellate decisions dealing with § 2917.21 have dealt with political speech." (R. 20, PageID 126.) Plaintiffs instead rely on one case where a speaker was prosecuted under a different section of the telecommunications harassment statute for speech directed at a public official. *See Hagedorn v. Cattani*, 715 F. App'x 499, 502 (6th Cir. 2017). That section prohibits unwanted telecommunications sent directly to a person who has "previously told the caller not to make a telecommunication to those premises." Ohio Rev. Code § 2917.21(A)(5). It thus differs from §§ 2917.21(B)(1) and (B)(2) in two major

ways: (A)(5) does not contain the same "purpose" requirement as the sections Plaintiffs contest, and it requires the recipient to request the speaker to cease telecommunications. *Id.*; *see Hagedorn*, 715 F. App'x at 503–04 (involving charges under (A)(5) against a village resident who sent fifteen e-mails to the village mayor's personal e-mail address, despite requests to stop). A prosecution under this section thus does not meaningfully contribute to a history of prosecution under §§ 2917.21(B)(1) and (B)(2).

Turning to cases that do not involve political speech, Plaintiffs argue that one recent prosecution under § 2917.21(B)(2)[2] and two cases under the former § 2917.21(B) substantiate their fear of prosecution. In *C.W. v. Board of Education of Sycamore Community School District*, prosecutors charged a 12-year-old student under §§ 2917.21(B)(1) and (B)(2) for posting on the social media website Instagram of a group called "Clown.Clann," purportedly a group of "scary clowns." No. 1:17CV465, 2017 WL 8784837, at *1–*2 (S.D. Ohio Aug. 7, 2017). Amid a national scare over clowns threatening to attack schools, the student posted two comments under a Clown.Clann picture: "DUMB F---- COME TO SYCAMORE YOU WONT" and "I'll square up to these [clowns]." *Id.* at *1. Prosecutors charged him with telecommunications and cyber-harassment, though it was unclear what the student's purpose was in posting. *Id.* at *2. In another case involving social media, an Ohio appeals court reversed a defendant's conviction under § 2917.21(B) for posting a picture of a former friend on her MySpace social media profile with the caption, "Molested a little boy," because the court found the defendant could have posted with a non-harassing, non-threatening, and non-abusing purpose. *Ellison*, 900 N.E.2d at 229−31. The court held that § 2971.21(B) "creates a specific-intent crime: the state must prove the defendant's specific purpose to harass," and concluded that "[t]he legislature has created this

---

[2] Plaintiffs also reference three other cases brought under § 2917.21(B)(2), but these cases either do not include sufficient factual information or appear to involve threatening, not abusing or harassing, posts.

substantial burden to limit the statute's scope to criminal conduct, not the expression of offensive speech." *Id.* at 230. In the final Ohio case Plaintiffs offer, a state appeals court upheld a defendant's convictions under Ohio's terroristic threats statute and § 2917.21(B) because he posted, with the purpose to threaten, about his plans to kill police officers on his Facebook profile. *Klingel*, 88 N.E.3d at 460–61.

Plaintiffs acknowledge that *Klingel* was rightly decided under § 2917.21(B)'s prohibition on telecommunications made with threatening purpose—the portion of the statute they do not challenge here. But *Sycamore* and *Ellison* highlight the willingness of local prosecutors to bring charges under §§ 2917.21(B)(1) and (B)(2) for posts that were perceived to be made with the requisite intent to abuse or harass, and not to threaten. Plaintiffs emphasize that even though the defendant in *Ellison* was ultimately acquitted, she was still prosecuted for an online post despite her lack of criminal intent. Plaintiffs allege that this type of prosecution is precisely what they fear "should police or prosecutors believe their posts were written with the purpose of abuse or harassment." (R. 1, ¶ 15, PageID 5.)

None of Plaintiffs' articles or comments provided on the record, however, appear aggressive and "vaguely menacing," as Plaintiffs acknowledge was the case in *Sycamore*, or easily misconstrued as harassing or abusive, as in *Ellison*. Plunderbund describes its articles as "carefully researched and factual," (R. 1, ¶ 4, PageID 2) as is shown by the articles it submitted, which employ a reasoned, if at times derisive, tone. Articles such as "DeWine Pay-to-Play Cookbook: In Bed with Anti-Gay Activists" and "Attorney General DeWine Incorrectly Suggests Witnesses to Steubenville Rape Did Not Need To Call Police" appear to have political and journalistic purpose. (R. 2-3, PageID 39.) Similarly, Spinelli's online posts—such as the 2,500-word Plunderbund article "Ron O'Brien: 'Dead Man Walking'?" describing obstacles to Defendant

O'Brien's re-election—address matters of public concern and appear unlikely to be considered abusive or harassing. (*Id.*, PageID 40.) Portage County TEA Party has not alleged that anyone has perceived its members' posts on social media and other websites as abusive or harassing. Moreover, its members' posts occur in the context of political debate and public discourse and are therefore distinguishable from the posts in *Sycamore*, *Ellison*, and *Klingel*.

Plaintiffs thus have not cited a single case that shows a history of enforcement against them or against the type of online posts they make. This lack does not matter, Plaintiffs argue, because their case is similar to *Babbitt v. United Farm Workers National Union*, where the Supreme Court held that a labor union had standing to challenge a statute prohibiting "dishonest, untruthful and deceptive publicity" during an agricultural boycott, even though prosecutors had never applied that statute to the union or similar entities. 442 U.S. at 301–02. In *Babbitt*, however, because no specific mental state was required under the statute, the inference arose that the government could appropriately prosecute the union for making statements the union believed, incorrectly, to be true. *Id.* The Court found the union's fear of prosecution was not "imaginary or wholly speculative" since "erroneous statement is inevitable in free debate." *Id.* at 301 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964)). By contrast, Ohio's cyber-harassment law requires a specific mental state, and it is not "inevitable" that Plaintiffs will post articles or comments that appear to be made with the specific intent to abuse or harass another person. *See id.*

Plaintiffs have not alleged a history of enforcement against them, and their subjectively chilled speech differs significantly from previously prosecuted online posts in subject, tone, context, and purpose. Plaintiffs have not sufficiently alleged "substantial risk that the harm will occur," *SBA List*, 134 S. Ct. at 2341 (internal quotation marks omitted), and therefore have not established the first *McKay* factor, *see McKay*, 823 F.3d at 869.

### b.   Ease or Likelihood of Enforcement

A statute is more likely to trigger a credible fear of prosecution if it contains a feature making enforcement of the statute "easier or more likely."  *Id.*  One such feature is a citizen-enforcement provision authorizing a member of the public to file complaints.  *See SBA List*, 134 S. Ct. at 2345; *Platt*, 769 F.3d at 452.  Only law enforcement officials can investigate a claim of telecommunications or cyber-harassment, and only prosecutors can bring charges.  Plaintiffs argue that a political figure or official could feel so harassed or abused by online posts that they report those posts to the police and that county prosecutors could be eager to prosecute because Plaintiffs have been "persistent critic[s] of prosecutors."  (R. 2-3, PageID 40.)  While these scenarios could occur, they do not rely on alleged facts and instead require accepting that plaintiffs "*might* incur injury in the future *if* the law is not properly followed and *if* their intentions are misconstrued." *White*, 601 F.3d at 554 (citation omitted).

Alleging a risk of false prosecution fails to establish standing when plaintiffs' unsupported allegations are "simply too . . . highly conjectural to present a threat of immediate injury, as the allegations rest[] on a string of actions the occurrence of which is merely speculative."  *Id.* (internal quotation marks and citation omitted).  In *White*, gamefowl breeders and an organization that promotes gamefowl showing brought a pre-enforcement challenge to a provision of the Animal Welfare Act banning animal fighting.  *Id.* at 548–51.  The plaintiffs feared that when they transported their birds across state lines, authorities "may misinterpret the plaintiffs' intent and may wrongly prosecute them."  *Id.* at 553.  We found that the chain of events necessary for false prosecution veered "into the area of speculation and conjecture."  *Id.* at 554.  Here, Plaintiffs allege a similarly unlikely scenario:  that they make an online post without the requisite intent to abuse or harass, the post is misinterpreted as having an abusive or harassing purpose, the post is reported, and law enforcement authorities bring charges despite investigating Plaintiffs' long histories of

legitimate political speech *and* despite the specific-intent requirement in the statute and its caselaw. Plaintiffs' allegations are too speculative to support the *McKay* factor addressing the ease or likelihood of enforcement.

### c. *Evidence of Intention to Enforce*

Finally, a threat of future enforcement is considered especially substantial when the administrative agency "ha[s] not disavowed enforcement if [plaintiffs] make similar statements in the future." *SBA List*, 134 S. Ct. at 2345; *see also Babbitt*, 442 U.S. at 302 (finding plaintiffs could reasonably fear prosecution because "the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices"). This court, sitting en banc, has "[given] weight to the government's assertion that 'it has no intention of enforcing the law in this setting—as proved by the fact that the Attorney General, a *party* to this case and the sole defendant in it, has taken the position that the statute does not apply to [the conduct in question].'" *Glenn*, 690 F.3d at 426 (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 339 (6th Cir. 2009)). In *Glenn*, the plaintiffs—pastors seeking to "publicly denounce homosexuality"—did not allege "any express (or even implied) threat of official enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for the type of conduct they seek to practice." *Id.* at 424. Thus, we found "there is nothing that *objectively* supports 'a credible threat of prosecution.'" *Id*. (quoting *Johnson v. Turner*, 125 F.3d 324, 337 (6th Cir. 1997)). But standing may be established under our precedent on targeted laws, which holds that even when prosecutors disavow enforcement of a law, plaintiffs may still sufficiently allege standing when the law is specifically targeted at the plaintiffs. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394–95 (6th Cir. 1987) (finding that the language of an ordinance targeting abortion providers "clearly contemplates that facilities such as the one operated by Planned Parenthood would be subject to application of the statute").

Defendants—the people Plaintiffs allege would prosecute them for political speech—have expressly affirmed that the law in question does not reach political expression. Like the Attorney General in *Glenn*, Defendants have disavowed enforcement of the statute against Plaintiffs' articles and comments. *See* 690 F.3d at 426. Unlike the plaintiffs in *Planned Parenthood*, Plaintiffs have not shown that their speech is specifically targeted by §§ 2917.21(B)(1) and (B)(2) such that the statutes clearly apply to them. *See* 822 F.2d at 1394. "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt*, 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). The lack of a history or likelihood of enforcement combined with Defendants' stated intention not to enforce the telecommunications or cyber-harassment statutes against Plaintiffs shows there is no "substantial risk" that Plaintiffs will be prosecuted. *SBA List*, 134 S. Ct. at 2341.

Because Plaintiffs have not established any *McKay* factor to substantiate their allegation of subjective chill, Plaintiffs have not established a credible threat of prosecution. *See McKay*, 823 F.3d at 868–69.

### III.    CONCLUSION

The dispositive issue here is whether Plaintiffs have suffered an injury-in-fact. Plaintiffs have alleged a subjective chill of their constitutional rights but have failed to allege a factual, non-conjectural basis for their fear of prosecution. Without a credible threat of enforcement sufficient to establish an injury-in-fact, Plaintiffs lack standing to bring a pre-enforcement challenge to Ohio's cyber-harassment statute. We therefore **AFFIRM** the district court's dismissal of the claims.