RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RUSSELL KISER,

*Plaintiff-Appellant,*

No. 13-3956

*v.*

LILI REITZ et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus
No. 2:12-cv-00574 —Algenon L. Marbley, District Judge.

Argued: May 8, 2014

Decided and Filed: August 27, 2014

Before: MOORE and ROGERS, Circuit Judges; NIXON, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Todd W. Newkirk, FRANK R. RECKER & ASSOCIATES, Columbus, Ohio, for Appellant. Katherine J. Bockbrader, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Todd W. Newkirk, FRANK R. RECKER & ASSOCIATES, Columbus, Ohio, for Appellant. Katherine J. Bockbrader, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

---

[*]The Honorable John T. Nixon, Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   Dr. Russell Kiser is trained as a general dentist and as an endodontist specializing in root canal procedures.  The Ohio State Dental Board (the "Board"), of which the Defendants are members, promulgated regulations that restrict his ability to advertise as a specialist in endodontics while also practicing as a general dentist.  Kiser asserts that the regulations are unconstitutional because they chill his exercise of his First Amendment commercial speech rights.  On this appeal, we must determine whether Kiser has adequately demonstrated that he has standing to bring his claim under the Supreme Court's recent opinion in *Susan B. Anthony List v. Driehaus*, No. 13-193, 2014 WL 2675871 (U.S. June 16, 2014).  Because Kiser has alleged facts demonstrating that he faces a credible threat that the Board's advertising regulations will be enforced against him in the future, we conclude that he has standing to assert his pre-enforcement challenge to the regulations.  Accordingly, we **REVERSE** the district court's dismissal of Kiser's complaint for lack of subject-matter jurisdiction and **REMAND** for further proceedings.

## I. BACKGROUND

Dr. Russell Kiser is a licensed dentist practicing in Mansfield, Ohio.  R. 2 (Compl. ¶ 19) (Page ID #9).  He is thus subject to the regulation of the Ohio State Dental Board, which is authorized by statute to regulate the dental profession in Ohio by promulgating rules, investigating violations of the rules, and administering discipline.  Ohio Rev. Code §§ 4715.02 and 4715.03.  One regulation promulgated by the Board relates to dentists' advertising:  it provides that if a dentist chooses to advertise as a "specialist" in a recognized field, he may not practice or advertise services outside the scope of that specialty.  Ohio Admin. Code §§ 4715-5-04, 4715-13-05.  Kiser completed an accredited post-doctoral program in endodontics and he is a Diplomate of the American Board of Endodontics.  He accordingly may be recognized as a "specialist" in endodontics pursuant to Ohio Administrative Code § 4715-5-04(B)(3) and (4).  R. 2 (Compl. ¶ 20) (Page ID #10).

Kiser opted to advertise himself as a specialist in endodontics, but he also continued to perform general dentistry services.  On August 17, 2009, the Board issued a written warning to Kiser for practicing "outside the scope" of his declared specialty in endodontics, in violation of Ohio Administrative Code § 4715-5-04(B)(2).  *Id.* ¶ 22 (Page ID #10–11); R. 8-1 (Warning Ltr.) (Page ID #88–89).  In relevant part, the letter stated as follows:

> The Ohio State Dental Board (Board) recently concluded an investigation regarding the treatment rendered by you to a particular patient.  Based on information received during the course of the investigation, and information that the Board had received previous thereto, concerns have arisen regarding the scope of your practice as an endodontist.
>
> . . .
>
> [A]s a specialist, one can only advertise services associated with the specialty declared.
>
> . . .
>
> You have limited your license to the specialty of endodontics.  Although you are qualified to perform procedures outside the scope of endodontics, you are NOT permitted to perform procedures that are not part of the specialty training of an ADA [American Dental Association] accredited program in endodontics.
> Therefore, if you wish to continue to declare yourself as a specialist in endodontics, you must advertise accordingly, and limit your practice per the ADA's definition.  If you would prefer to practice in areas outside the scope of endodontics, you may do so by no longer holding yourself out as a specialist in endodontics.  You can be a general dentist, and then advertise and perform specialty services you are qualified to perform, so long as you also state you are a general dentist.

R. 8-1 (Warning Ltr.) (Page ID #88–89).  The Board did not take any further action at that time.

In May 2012, Kiser requested that the Board approve proposed signage for his office, which included the terms "endodontist" and "general dentist."  R. 2 (Compl. ¶ 23) (Page ID #11).  The Board neither approved nor rejected Kiser's proposed signage.  Instead, on May 24, 2012, the Board sent Kiser a second letter recommending that he consult legal counsel.  *Id.*  Enclosed with the letter were a copy of the regulations at issue and a copy of the first warning letter.  *Id.*

Kiser filed a complaint in the United States District Court for the Southern District of Ohio pursuant to 42 U.S.C. § 1983 alleging that the provisions of the Ohio Administrative Code regulating dentists' advertising unconstitutionally restrict his First Amendment rights by limiting

his truthful advertisement of the full range of services for which he is licensed.[1]   He sought injunctive and declaratory relief.  On the Board's motion, the district court dismissed Kiser's complaint for lack of subject matter jurisdiction because "the Board has not yet enforced the regulations at issue against Dr. Kiser, [and] his claim is not ripe for adjudication." *Kiser v. Reitz*, No. 2:12-cv-574, 2013 WL 4080734, at *3 (S.D. Ohio Aug. 13, 2013).  The district court explained that Kiser's challenge to the regulations was not ripe because "[i]t is uncertain whether the Dental Board will ever initiate any formal charges against Dr. Kiser, and if it does, there are mechanisms in place at the administrative level for Dr. Kiser to challenge the Board's disciplinary action." *Id.* at *4.  Kiser timely appealed the district court's dismissal of his complaint.

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss for lack of subject matter jurisdiction.  *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).  When considering a challenge to a complaint based on lack of subject-matter jurisdiction, we "must take the material allegations of the [complaint] as true and construe[] [them] in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  It is the plaintiff's burden, however, to prove that this court has jurisdiction over his claim, *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986), and that the complaint contains sufficient factual matter to state a claim for relief that is plausible on its face, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

## III.  STANDING

The jurisdiction of federal courts is limited by Article III of the Constitution to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  The standing doctrine delineates the boundary between justiciable cases and controversies and those disputes that are not appropriately resolved through judicial process.  Although "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III," the Supreme Court has

---

[1]Kiser made additional constitutional claims in his complaint, but he has not raised those issues on appeal. Accordingly, we will not consider whether those claims are ripe for adjudication. *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

recognized that "some of [the standing doctrine's] elements express merely prudential considerations that are part of judicial self-government." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The ripeness doctrine is one of several justiciability doctrines "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The "basic rationale" of ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also to protect . . . from judicial interference until a[] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). In addition, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Although the ripeness doctrine traditionally incorporates both constitutional and prudential elements, the Supreme Court has recently suggested that prudential justiciability doctrines are "in some tension with . . . the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal quotation marks omitted). Thus, the Supreme Court has cast into some doubt "the continuing vitality" of the long-established prudential aspects of the ripeness doctrine, specifically the aspects that concern hardship to the parties and fitness of the dispute for resolution. *Susan B. Anthony List v. Driehaus*, No. 13-193, 2014 WL 2675871, at *11 (U.S. June 16, 2014). Instead, the Court addressed the constitutional component of ripeness in terms of standing. *Id.* at *5 n.5. Accordingly, we will address Kiser's claim, which was dismissed as unripe by the district court, using the constitutional standing framework.[2]

---

[2] The "prudential" ripeness factors—hardship to the parties and fitness of the record for review—are also satisfied in the instant case. Kiser will suffer continuing injury every day that he is unable to engage in constitutionally protected commercial speech. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Moreover, we would not benefit from allowing the factual record to develop further because this case presents a purely legal question. The regulations are not subject to refinement on a case-by-case basis: either a dentist's advertisement conforms to the regulations or it does not. *Compare Abbott Labs.*, 387 U.S. at 152 (concluding that a challenge to regulations relating to the labeling of pharmaceuticals did not need further factual development because the regulations were "clear-cut" and not subject to further agency discretion or refinement), *with Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998) (concluding that immediate judicial review would interfere

A plaintiff must demonstrate that he has standing to pursue his claim in federal court by showing three elements:  (1) that he has suffered an "injury in fact," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations and quotation marks omitted).  In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an "injury in fact" before the state has actually commenced an enforcement proceeding against him.  "In the context of a free-speech overbreadth challenge like this one, [however,] a relaxed ripeness standard applies to steer clear of the risk that the law 'may cause others not before the court to refrain from constitutionally protected speech or protection.'"  *Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)); *see also Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights.").

A plaintiff suffers an "injury in fact" when his legally protected interest has been invaded and the injury is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted).  Although most federal claims assert allegations that the plaintiff has suffered a past injury, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *SBA List*, 2014 WL 2675871, at \*5 (internal quotation marks omitted).  A plaintiff satisfies this requirement when he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  When a plaintiff has engaged in a course of conduct and the state has instructed him to stop or face disciplinary action, we may infer a threat of prosecution that is neither "chimerical," *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (internal quotation marks omitted), nor "imaginary or wholly speculative," *Babbitt*, 442 U.S. at 302.  Under such

---

with administrative efforts to refine logging policies because the agency's regulations called for administrative approval of site-specific proposals).  Accordingly, the prudential ripeness factors do not pose a barrier to judicial review of Kiser's claim.

circumstances, a plaintiff has adequately alleged a concrete and imminent harm sufficient to meet the "injury in fact" requirement.

In the instant case, Kiser alleges that he has been harmed by the Board's "unlawful[] restrict[ion] [of his] First Amendment commercial free speech rights." R. 2 (Compl. ¶ 34) (Page ID #14). He asserts that the Board's threatened enforcement of its regulations has "exert[ed] a chilling effect on his attempt to advertise" because he "would . . . like to advertise that he performs [general dentistry] services, but is prohibited from doing so by the [Board's] regulation[s]." *Id.* ¶¶ 23, 26 (Page ID #11–12). Because the Board has not yet enforced its regulations in a disciplinary action against Kiser, he cannot demonstrate past injury. However, Kiser has alleged a credible threat of future prosecution sufficient to demonstrate that he is suffering an injury in fact.

First, Kiser has alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Babbitt*, 442 U.S. at 298. Kiser alleged that he has advertised both general dentistry and endodontic services in the past and that he intends to do so in the future. Although advertisements and other commercial speech enjoy less rigorous First Amendment protection than other forms of expression, *see United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993), commercial speech is nonetheless constitutionally protected so long as it "concerns lawful activity and is not misleading," *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). Therefore, Kiser's intended advertisement of his general dentistry and endodontic services—both of which he is licensed and qualified to perform—implicates a constitutional interest. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (concluding that First Amendment freedoms are affected when speech is "either threatened or in fact being impaired at the time relief [is] sought").

Second, Kiser's intended conduct is "arguably . . . proscribed by" the regulations issued by the Board. *Babbitt*, 442 U.S. at 298. The Board's regulations provide that a dentist may practice and advertise either as a generalist or as a specialist; however, if the dentist chooses to "seek[] specialty recognition," his practice and advertising "must be limited exclusively to the indicated specialty area(s)." Ohio Admin. Code § 4715-5-04(B)(2). Kiser wishes to advertise himself as a specialist in endodontics while also advertising and performing general dentistry

procedures.  This is the same speech that the Board has in the past warned Kiser that it considers a violation, "[a]nd, there is [thus] every reason to think that similar speech in the future will result in similar proceedings."  *SBA List*, 2014 WL 2675871, at *9.  Accordingly, Kiser's intended conduct arguably violates the Board's regulations.

Finally, Kiser has alleged that a credible threat of prosecution under the regulations exists.  A plaintiff asserting standing to challenge a law before it has been enforced against him must show a "credible fear" that the state or its agents will in fact enforce the law in his case. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002).  A threat of future enforcement may be "credible" when the same conduct has drawn enforcement actions or threats of enforcement in the past. *See Steffel*, 415 U.S. at 459.  Such a threat is considered especially substantial when the administrative agency "ha[s] not disavowed enforcement if [the plaintiffs] make similar statements in the future."  *SBA List*, 2014 WL 2675871, at *10; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010).  Moreover, the threat need not stem from a criminal action: "[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."  *SBA List*, 2014 WL 2675871, at *10 (noting that the threat of administrative proceedings was "a substantial one" but declining to "decide whether that threat standing alone gives rise to an Article III injury"); *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625–26 n.1 (1986) ("If a reasonable threat of prosecution creates a ripe controversy, we fail to see how the actual filing of the administrative action threatening sanctions in this case does not.").

Here, Kiser has alleged that the Board has in the past threatened to enforce the regulations against him when he advertised or practiced general dentistry services in addition to endodontic specialty services.  On one occasion, the Board sent a letter to Kiser explaining that it had investigated his practice and determined that his advertising or services were "outside the scope" of his specialty, and thus in violation of the regulations.  R. 2 (Compl. ¶¶ 22–23) (Page ID #10–11); R. 8-1 (Warning Ltr.) (Page ID #88–89).  On a second occasion, after Kiser sought approval of proposed signage for his office, the Board reiterated its warning that Kiser was advertising beyond the scope of his specialty, and recommended that Kiser seek the advice of counsel.  R. 2 (Compl. ¶ 23) (Page ID #11).  Although these letters did not commence an official

enforcement action, they may fairly be read to threaten implicitly enforcement of the regulations if Kiser persisted in practicing or advertising outside the scope of his specialty. Moreover, the Board has not represented that it will decline to enforce the regulations against Kiser should he continue to advertise as both an endodontist and a general dentist. Thus, the Board's warning regarding Kiser's past advertisements and its response to the signage that he wishes to display in the future together constitute a credible threat that Kiser will be subject to an enforcement action.

Furthermore, the injury Kiser would suffer from an enforcement action is not insubstantial merely because it is not accompanied by a threat of criminal sanctions. An administrative action carries significant consequences for Kiser: the Board is empowered to suspend or revoke Kiser's license to practice dentistry in the State of Ohio, *see* Ohio Rev. Code § 4715.03(B)(1), and thus Kiser faces a threat to his livelihood should he persist in flouting the Board's regulations. The potential administrative sanctions are therefore serious enough on their own, absent any potential criminal penalties, to create a constitutional injury in fact.

We conclude that Kiser has alleged facts demonstrating that he has suffered an injury in fact because he faces a credible threat that the regulations will be enforced against him in violation of his First Amendment right to engage in commercial speech. He has also alleged a causal connection between his injury and the allegedly unconstitutional regulations—it is the threatened enforcement of the regulations that chills his truthful advertisement of his services. Finally, Kiser has alleged that it is likely that his "injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). If warranted, the court may issue a declaratory judgment that the regulations are unconstitutional or it may enjoin enforcement of the regulations against Kiser. Accordingly, Kiser's claim is ripe for adjudication, and he has standing to assert his claim in federal court.

**IV. CONCLUSION**

For the foregoing reasons, we **REVERSE** the district court's dismissal of Kiser's complaint and **REMAND** for further proceedings consistent with this opinion.