NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0093n.06

No. 19-3240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 10, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DARIA SALEH; L.A., a minor; E.A., a minor; B.A., a minor, | ) ) ) |
| *Plaintiffs-Appellants*, | ) ) ) |
| v. | ) ) |
| WILLIAM P. BARR, Attorney General; CHRISTOPHER WRAY, Director of Federal Bureau of Investigation; KIRSTJEN M. NIELSEN, Secretary of the Department of Homeland Security, in their individual and official capacity, | ) ) ) ) ) ) ) |
| *Defendants-Appellees*. | ) ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs, citizen children of a lawful permanent resident, appeal the district court's order dismissing their Declaratory Judgment Act claims brought pursuant to 28 U.S.C. § 2201 for lack of subject-matter jurisdiction. Plaintiffs sought two declarations from the district court: (1) that agents of the Federal Bureau of Investigation ("FBI") and United States Citizenship and Immigration Services ("USCIS") conspired and fraudulently misled their father into withdrawing his application for United States citizenship, thereby exposing him to the threat of removal and exposing Plaintiffs to the risk of separation from their father due to removal; and (2) that their father is not required to testify in any trial resulting from his plea agreement in his criminal case. The district court dismissed Plaintiffs' claims for declaratory relief, finding that

neither claim was ripe for judicial review. For the reasons set forth below, we agree with the district court that Plaintiffs do not have standing to assert their claims. Therefore, we affirm.

## BACKGROUND

### A. Factual Background

Plaintiffs, United States citizen children residing in Dayton, Ohio, bring this action for declaratory relief through their mother. Plaintiffs' complaint alleges the following facts, which this Court accepts as true for the purposes of determining subject-matter jurisdiction at the pleading stage. *See, e.g.*, *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).

At some point in 2010, Plaintiffs' father was under investigation for various federal crimes.[1] Plaintiffs' father is a legal permanent resident ("LPR") of the United States. According to Plaintiffs, his LPR status "expires" in 2019.[2] R. 1, Pg. ID 3. As of November 2010, Plaintiffs' father had fully satisfied the requirements to become a United States citizen. He was scheduled to attend a naturalization ceremony in November 2010. However, one day before the ceremony, an officer from the Cincinnati office of USCIS advised Plaintiffs' father not to attend the ceremony due to "security reasons." *Id.* at Pg. ID 4. Plaintiffs' father did not attend the ceremony. Plaintiffs allege that the USCIS officer's statement "was untrue and intended to mislead Plaintiffs' father into losing his status as a citizen." *Id.*

---

[1] Plaintiffs have withheld their father's name to protect his personal safety.

[2] Although Plaintiffs allege that their father's LPR status "expires," the district court correctly accepted Defendants' uncontroverted authority showing that a person does not lose LPR status without adjudication or intentional abandonment. *See* R. 29, Pg. ID 108 (citing 8 C.F.R. § 1001.1(p) (LPR status "terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission"); *Matter of C-J-H*, 26 I & N Dec. 284, 287 (BIA 2014) ("The respondent therefore remains a lawful permanent resident until there is a final order of removal."); *Maintaining Permanent Residence*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card/after-green-card-granted/maintaining-permanent-residence (last updated Feb. 17, 2016) ("You will lose your permanent resident status if an immigration judge issues a final removal order against you.")).

In June 2011, Plaintiffs' father was indicted for eleven counts of dealing in firearms without being a licensed dealer in violation of 18 U.S.C. § 922(a)(1)(A); two counts of the unauthorized use, transfer, acquisition, alteration, or possession of SNAP benefits in violation of 7 U.S.C. § 2024(b); and two counts of wire fraud in violation of 18 U.S.C. § 1343. On October 13, 2011, Plaintiffs' father pleaded guilty to one count of each of the offenses charged.

Prior to entering his plea of guilty, Plaintiffs' father met with FBI agents. FBI Agent Mark Dowd told Plaintiffs' father that the FBI could help him if he worked with the Bureau as an informant. Specifically, Plaintiffs allege that FBI agents told Plaintiffs' father that "if he helped the FBI, they would keep him out of jail and 'work behind the scenes' so that when he eventually had to go to immigration court, his case would be dismissed." R. 1, Pg. ID 4. Plaintiffs' father agreed to work with the FBI as an informant "and met with FBI agents weekly, two to three times a month, before his plea agreement." *Id.* Plaintiffs allege that their father "has been involved in and supplied information in terrorism cases." *Id.*

Then, in 2012, Plaintiffs' father received a letter from USCIS requesting that he come to USCIS's Cincinnati office. However, FBI Agent Dowd spoke to a representative at the USCIS office, and Dowd told Plaintiffs' father not to go to the USCIS office or he would be taken into custody. "Dowd advised the Plaintiffs' father to withdraw his request for citizenship, which Plaintiffs' father did." *Id.* at Pg. ID 5. "Agent Dowd subsequently got the Immigration and Customs Enforcement (ICE) warrant withdrawn."[3] *Id.* "Since [2012], Plaintiffs' father reports

---

[3] In the complaint, Plaintiffs initially characterize the paper that their father received as "a letter from the USCIS office in Cincinnati, telling him to come to their office." R. 1, Pg. ID 5. Three paragraphs later, they characterize the paperwork as an "Immigration and Customs Enforcement (ICE) warrant." *Id.* Plaintiffs did not enter the alleged "warrant" or letter into the record in the district court or otherwise provide any allegations about what it said.

annually to USCIS and, states that he is voluntarily working for the FBI and USCIS takes no action against him." *Id.*

At some point, FBI Agent Michael Newman countered Agent Dowd's statement that the FBI would help to get a removal proceeding against Plaintiffs' father dismissed, telling Plaintiffs' father that it "does not work that way." *Id.* Agent Newman stated that the FBI would argue against removal if such a proceeding is initiated, but could not promise anything.

At another point, following his plea agreement and cooperation with the FBI, Plaintiffs' father was told that he may be required to testify at a trial set for June or July 2018.[4] Plaintiffs' father was told that his identity could not be protected if he testifies. Plaintiffs allege that their "father was never told during th[e] period before his plea agreement, that he would ever have to testify in court for the FBI." *Id.* at Pg. ID 4. Plaintiffs allege that they "fear for the safety of their father if he is required to testify in the upcoming [2018] trial." *Id.* at Pg. ID 5.

Lastly, Plaintiffs allege that "[b]ecause the FBI agents herein misrepresented or did not fully inform the Plaintiffs' father of their limited ability or lack of ability to intervene in his immigration status, and because of his reliance on Agent Dowd's instruction to request the withdrawal of his citizenship application, although all that remained was his swearing-in, they have exposed the Plaintiffs' father to removal from the United States." *Id.* at Pg. ID 6. They allege that separation from their father will deprive them of their father's "continued love, affection, care and financial support." *Id.*

---

[4] Plaintiffs have withheld the name and case number of the 2018 trial.

**B. Procedural History**

Plaintiffs, represented by counsel, initiated this action for declaratory relief against the United States Attorney General, agents of the FBI, and officers of the Department of Homeland Security on May 8, 2018. Plaintiffs allege that "the actions of the Attorney General and the Department of Justice violate the Due Process Clause of the Fifth and Fourteenth Amendments, the Equal Protection Clause, the Ninth Amendment, the Tenth Amendment and international treaties . . . and the customs and conventions of civilized nations." *Id.* at Pg. ID 2. Plaintiffs sought two declarations from the district court:

> [T]hat this Court declare [1] that the Plaintiffs' father not be required to testify in the trial scheduled for June or July 2018 (name withheld) or in any trial or other public hearing resulting from the negotiations and the plea agreement in his criminal case . . . and [2] that Defendant agents of the FBI and USCIS conspired and affirmatively and fraudulently misrepresented the reason for the Plaintiffs' father not to attend his citizenship swearing-in after he had completed and was approved for citizenship, thereby depriving him of the rights and protections of a United States citizen and exposing him to removal from the United States and physical harm and thus exposing the Plaintiffs to the loss of their father and his support, love and care and the violation of their equal protection, due process and Ninth Amendment rights and in violation of international treaties and the customs and conventions of civilized nations.

*Id.* at Pg. ID 7.

Defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argued that the district court lacked jurisdiction because (1) Plaintiffs failed to identify a waiver of sovereign immunity, (2) Plaintiffs lack standing to bring their claims, and (3) Plaintiffs' claims are not ripe for review. Defendants further argued that even if the district court determined that it could exercise jurisdiction, it should decline to do so in its discretion under the Declaratory Judgment Act, 28

U.S.C. § 2201. After full briefing, the district court dismissed Plaintiffs' claims for lack of jurisdiction, finding that "neither of Plaintiffs' claims for declaratory judgment is ripe." R. 29, Pg. ID 106. The district court did not consider Defendants' other arguments under Rule 12(b)(1) or (6), finding that the ripeness issue was dispositive of the case.

Plaintiffs appeal the district court's judgment granting Defendants' motion to dismiss.

## DISCUSSION

### A. Standard of Review

This Court has an independent duty to assess subject-matter jurisdiction. *E.g.*, *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993). "We review a district court's findings as to whether it had subject matter jurisdiction de novo." *Jomaa v. United States*, 940 F.3d 291, 294 (6th Cir. 2019) (quoting *Mehanna v. USCIS*, 677 F.3d 312, 314 (6th Cir. 2012)).

Article III of the United States Constitution requires federal courts to limit themselves to hearing only actual "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The standing doctrine delineates the boundary between justiciable cases and controversies and those disputes that are not appropriately resolved through judicial process." *Kiser*, 765 F.3d at 606. The elements of standing are: "(1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury." *Friends of Tims Ford*

*v. Tenn. Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998)).

"Although 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III,' the Supreme Court has recognized that 'some of [the standing doctrine's] elements express merely prudential considerations that are part of judicial self-government.'" *Kiser*, 765 F.3d at 606 (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The doctrine "aims 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). Ripeness "becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all," *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 533 (6th Cir. 2001) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)), and "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review," *Magaw*, 132 F.3d at 280.

This Court recently stated in *Kiser v. Reitz* that "the Supreme Court has cast into some doubt 'the continuing vitality' of the long-established prudential aspects of the ripeness doctrine, specifically the aspects that concern hardship to the parties and fitness of the dispute for resolution." 765 F.3d at 607 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). We found that the Supreme Court in *Driehaus* "addressed the constitutional component of ripeness in terms of standing," *id.* (citing *Driehaus*, 573 U.S. at 158 n.5), and therefore analyzed

the plaintiff's claim, "which was dismissed as unripe by the district court, using the constitutional standing framework," *id.* In line with our reasoning in *Kiser*, we analyze Plaintiffs' claims, which the district court dismissed as unripe, under the constitutional standing framework. For the reasons that follow, we find that Plaintiffs do not have standing to bring either of  their claims for declaratory relief.

**B. Removal of Plaintiffs' Father**

Plaintiffs seek a declaration that agents of the FBI and USCIS conspired to prevent their father from obtaining citizenship in part by making false representations during his plea negotiations in his criminal case, thereby exposing him to the threat of removal and exposing Plaintiffs to the risk of separation from their father if he is removed. The district court found that Plaintiffs' claim was not ripe for judicial review because, "[i]n order for Plaintiffs' father to be removed from the country, a series of events would have to occur." R. 29, Pg. ID 107. Specifically, Plaintiffs' father would be subject to deportation only if he "does not apply for citizenship; [DHS] brings removal proceedings against their father in the future; an immigration judge determines that their father is removable and enters an order of removal; the [BIA] and a federal court of appeals uphold the immigration judge's decision; and their father is removed." *Id.* at Pg. ID 107–08 (quoting R. 23, Pg. ID 84). Plaintiffs have not demonstrated that any of these possibilities is likely to occur. Plaintiffs do not allege that any removal proceeding has been initiated against their father. While Plaintiffs say that their father received an "ICE warrant" in 2012, they also allege that FBI Agent Dowd subsequently had that warrant withdrawn. Plaintiffs do not allege that their father has received any Notice to Appear in the last seven years, or that any immigration proceeding has been initiated against him. Moreover, even if a removal proceeding had been initiated against Plaintiffs' father, Plaintiffs would not be able "to prove in advance that the judicial system will lead to any

particular result in [their father's] case." *Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990). Accordingly, we find that the removal of Plaintiffs' father is highly "speculative and may never occur." *Magaw*, 132 F.3d at 280. To the extent that Plaintiffs' claim seeks prospective relief to prevent the removal of their father, we agree with the district court that such a claim is not ripe for judicial review.

Plaintiffs attempt to navigate around the ripeness issue at the heart of their case by arguing that the *exposure* to the risk of their father's removal is itself injury in fact, rather than his actual removal. Plaintiffs contend that the FBI's past alleged conduct—fraudulently misrepresenting the Bureau's ability to intervene in an immigration proceeding and encouraging their father to withdraw his application for citizenship—constitute an injury that occurred in the past, and the exposure to the risk of being separated from their father by removal is the present effect of that injury. They claim that, but for Defendants' actions, they "would have the security of a permanent father who is a United States citizen" but "[t]hey do not now possess that security." Appellants' Br. at 7. However, even framed in this way, Plaintiffs fail to satisfy the constitutional requirements of the standing doctrine.

Turning first to the injury-in-fact requirement, Plaintiffs fail to allege a concrete injury to their legal interests resulting from Defendants' actions. For purposes of Article III, injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan,* 504 U.S. at 560 (citations and footnote omitted). Regarding a "legally protected interest," Plaintiffs allege that the FBI's actions in this case exposed them to the risk of separation from their father, and that this violates their due-process and equal-protection rights, among others. It is unclear whether Plaintiffs have a "legally protected interest" in the security of a father who is permanently in the United States. *See,*

*e.g.*, *Hernandez-Lara v. Holder*, 563 F. App'x 401, 403 (6th Cir. 2014) ("[T]he law on this point is settled: a United States-citizen child's constitutional rights are not implicated by the government's otherwise valid decision to deport that child's parents." (collecting cases)). Still, this Court must be careful to avoid the "confusion" that results when courts conflate "the question [of] whether a plaintiff states a claim for relief" with "the justiciability of a dispute." *Bond v. United States*, 564 U.S. 211, 219 (2011). Therefore, in an abundance of caution and only for the purpose of determining if Plaintiffs' claim is justiciable, we assume without deciding that Plaintiffs have alleged a legally protected interest.

Even with the benefit of that assumption in their favor, however, Plaintiffs have not demonstrated a concrete injury to their interest. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Thus, the Supreme Court has "said many times before" that "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore*, 495 U.S. at 158; *accord, e.g.*, *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). This general rule "does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Spokeo*, 136 S. Ct. at 1549. Instead, a threat of future harm can satisfy the injury-in-fact requirement of Article III standing if "there is a 'substantial risk' that the harm will occur." *Kanuszewski*, 927 F.3d at 405 (quoting *Clapper*, 568 U.S. at 414 n.5).

There are at least two types of cases in which courts have held that a substantial risk of future harm alone constitutes a concrete injury in fact. First, the Supreme Court has found that standing is satisfied when "a reasonable probability of *future* injury comes accompanied with *present* injury that takes the form of reasonable efforts to mitigate the threatened effects of the future injury or to prevent it from occurring." *Clapper*, 568 U.S. at 437 (emphasis preserved).

Thus, in *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139 (2010), the Court found that certain alfalfa-farmer plaintiffs had standing "because the plaintiffs would suffer present harm by trying to combat the threat" of contamination to their conventional alfalfa crops if the Department of Agriculture decided to deregulate genetically engineered alfalfa. *Clapper*, 568 U.S. at 438; *see also id.* at 437–39 (clarifying the Court's holding in *Monsanto Co.*, 561 U.S. at 153–55). For example, the plaintiffs "'would have to conduct testing to find out whether and to what extent their crops have been contaminated.' . . . And they would have to take 'measures to minimize the likelihood of potential contamination and to ensure an adequate supply of non-genetically-engineered alfalfa.'" *Id.* (quoting *Monsanto Co.*, 561 U.S. at 154). The Supreme Court found that the present harms that the plaintiffs would suffer, even if the potential future harm did not occur, were "sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis." *Id.* (quoting *Monsanto Co.*, 561 U.S. at 155). Similarly, in the data-breach context, this Court has suggested that a "[p]laintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation." *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016).

Second, the Supreme Court has found that a plaintiff adequately alleges a concrete harm sufficient to satisfy the injury-in-fact requirement when she alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). In such pre-enforcement cases, the plaintiff must demonstrate an "intention to engage in a course of conduct arguably affected with a constitutional interest" and a credible threat of future prosecution, such that she is

11

chilled from engaging in her intended course of conduct. *Id.* So, for example, this Court has found that a plaintiff has standing to bring a pre-enforcement challenge where he faces a credible threat that regulations will be enforced against him if he engages in commercial speech protected by the First Amendment. *See Kiser*, 765 F.3d at 609–10.

Other types of substantial risk of future harm may satisfy Article III's concreteness requirement, but these cases clarify the general rule that mere exposure to a vague risk of possible harm, without more, is insufficient for Article III standing. *E.g.*, *Whitmore*, 495 U.S. at 158; *accord Clapper*, 568 U.S. at 410 (holding that the plaintiffs lack Article III standing based on "highly speculative fear" that injury will occur). In the instant case, Plaintiffs have not alleged any facts that demonstrate an imminent, concrete injury in fact. Plaintiffs do not allege any injury from reasonable efforts to mitigate a substantial likelihood of future harm, *e.g.*, *Monsanto Co.*, 561 U.S. at 154–55, and they do not allege any intended conduct in which they are prevented from engaging for fear of prosecution, *e.g.*, *Driehaus*, 573 U.S. at 159. Instead, Plaintiffs allege the purely psychic harm of worry about the possibility of their father's removal, which Plaintiffs have not shown is likely to occur. Without more, we find that Plaintiffs have failed to satisfy the injury-in-fact requirement of Article III standing.

In a final attempt to demonstrate concrete injury, Plaintiffs point to this Court's prior decision in *Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010). In *Hamdi*, a plaintiff child sought "judicial review of his mother's order of removal and cancellation of that order." *Id.* at 626. This Court agreed with the district court that the citizen child of an alien parent had standing to assert his own distinct constitutional rights, which were implicated by the final order of removal against his mother. *Id.* at 624. Notwithstanding that the child had standing to assert his own constitutional rights, this Court found that the child had failed to state a claim upon which relief could be granted

because "under the current interpretation of [8 U.S.C.] § 1252(b)(9), no federal court has the authority to review the order of removal of [plaintiff's] mother . . . to determine whether a violation of the child['s] constitutional rights renders the imposition of the mother's removal order invalid . . . ." *Id.* at 628. While the *Hamdi* plaintiff's complaint was ultimately dismissed for failure to state a claim, *id.* at 628–29, there was an order of removal already entered against the plaintiff's mother at the time of his suit. Thus, the *Hamdi* plaintiff was able to allege a concrete, imminent injury-in-fact and that his injury could, at least theoretically, be redressed by a favorable decision from the district court canceling his mother's order of removal. In contrast, as discussed above, Plaintiffs in the present case do not plausibly allege that their father's removal is likely and imminent (or even, as in *Hamdi*, that an order of removal has already been entered against him).

Next, even assuming that Plaintiffs could demonstrate concrete injury in fact, they have not alleged any "hindrance" preventing their father from raising his own claims, either to challenge his plea in his criminal case or to challenge his possible removal in a future removal proceeding.[5] *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). If the FBI did, in fact, fraudulently induce Plaintiffs' father into entering a guilty plea in his criminal case, then Plaintiffs' father could seek to redress that constitutional injury himself. For example, he might file a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, challenging his plea as unknowing or involuntary, or pursue other avenues for relief. Plaintiffs have not alleged any reason why he would be unable to do so. In addition, Plaintiffs have not provided any reason why their father would not be able to assert his own rights in a removal proceeding, assuming one is initiated, and then on appeal to this Court, assuming that both the Immigration Judge and the Board of Immigration

---

[5] In this way, too, the present case is distinguishable from *Hamdi*, in which the plaintiff's mother had already asserted her rights in a removal proceeding. 620 F.3d at 623.

Appeals find against him. Plaintiffs cannot bootstrap their way into federal court by asserting past harm to a non-party without alleging any "hindrance preventing the third party from raising his own claim." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017).

Lastly, even if we were to find that Plaintiffs had demonstrated concrete injury in fact and hindrance to their father's ability to assert his own rights, it is entirely unclear how a favorable decision from the district court would redress the alleged injury. In this case, Plaintiffs seek a declaration from the district court that the FBI and USCIS fraudulently induced their father into withdrawing his citizenship application and thereby exposed Plaintiffs to the risk of separation from their father if he is removed. But, Plaintiffs have not shown how the declaration that they seek would minimize their insecurity about their father's removal in any way. This is because with or without the requested declaration, Plaintiffs' father could still face deportation proceedings at any time, and Plaintiffs have not provided any reason for this Court to conclude that the declaration they seek would somehow prevent his removal. Therefore, Plaintiffs have failed to prove that it is "'likely' as opposed to merely 'speculative'" that their insecurity about their father's removal will be redressed by a favorable decision declaring that the FBI's actions in their father's criminal case exposed Plaintiffs to the risk of separation from their father. *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

For these reasons, we hold that Plaintiffs' first claim for declaratory relief fails for lack of standing.

## C. Plaintiffs' Father's Trial Testimony

Plaintiffs' second claim for declaratory relief fares no better. Plaintiffs request a declaration that their father is not required to testify in a trial scheduled for June or July 2018 (the name and case number of which were withheld by Plaintiffs) "or in any trial or other public hearing resulting

from the negotiations and the plea agreement in his criminal case." R. 1, Pg. ID 7. They allege that they "fear for the safety of their father if he is required to testify in the upcoming [2018] trial." *Id.* at Pg. ID 5.

Plaintiffs' claim regarding the 2018 trial is moot. "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). The 2018 criminal trial in which Plaintiffs' father testified has already been completed. In the district court, the parties jointly moved to stay the present case until the completion of the criminal case in which Plaintiffs' father was testifying, and the court granted the motion. The stay was lifted following the completion of the criminal trial. Therefore, the declaration that Plaintiffs seek would have no effect on their father's interest against testifying in the already-completed 2018 trial in which he already testified. The claim is moot.

To the extent that Plaintiffs' claim requests prospective relief regarding any future trials in which their father might testify, the district court correctly found that Plaintiffs' claim is not ripe. Ripeness requires an injury in fact that is "certainly impending." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 533 (quoting *Magaw*, 132 F.3d at 280). Plaintiffs have not alleged any upcoming trials in which their father has been subpoenaed to testify. Thus, they have failed to allege a "certainly impending" injury in fact. Moreover, to the extent that Plaintiffs' claim is premised on the potential for unknown third parties to harm their father, they do not have standing to bring such a claim. *See, e.g.*, *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) ("When a plaintiff's alleged injury is the result of 'the independent action of some third party not before the

court,' the plaintiff generally lacks standing to seek its redress." (quoting *Simon*, 426 U.S. at 42)). Therefore, Plaintiffs' second claim for declaratory relief is nonjusticiable.

## CONCLUSION

Plaintiffs do not have standing to bring either of their claims for declaratory relief. Plaintiffs have failed to demonstrate injury in fact and redressability with respect to a declaration regarding their father's possible removal, and Plaintiffs' claim regarding their father's trial testimony is nonjusticiable for reasons of mootness and ripeness. Therefore, we affirm the decision of the district court dismissing Plaintiffs' claims for want of jurisdiction.