NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0089n.06

Case No. 23-1803

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 13, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF MICHIGAN, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | O P I N I O N |
| WILLIAM B. COWEN, in his official capacity as Acting General Counsel National Labor Relations Board, | ) | |
| Defendant - Appellee. | ) | |

Before: McKEAGUE, GRIFFIN, and LARSEN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Throughout her tenure as National Labor Relations Board General Counsel, Jennifer Abruzzo issued "policy guidance" memoranda.[1] She used these memoranda to establish policy initiatives and provide her interpretation of the National Labor Relations Act (NLRA).[2] The memoranda are not legally binding, and they are not final orders of the five-member National Labor Relations Board (the Board).

---

[1] Abruzzo served as General Counsel from July 2021 to January 2025. *See General Counsels Since 1935*, NLRB, https://perma.cc/X93U-GYWS. On February 3, 2025, President Trump appointed William B. Cowen as Acting General Counsel. *See* Office of Public Affairs, *President Trump Appoints William B. Cowen Acting General Counsel of the National Labor Relations Board*, NLRB (Feb. 3, 2025), https://perma.cc/J3K3-P2LE.

[2] Since 1973, the General Counsel has published more than 250 memoranda; Abruzzo authored 28 of them. *See* General Counsel Memos, National Labor Relations Board, https://perma.cc/H564-HCVJ.

In April 2022, Abruzzo issued Memorandum GC 22-04 (the Memo). The Memo detailed her view that captive-audience meetings—mandatory meetings in which employers urge employees to reject union representation—violate the NLRA. Because the Board previously recognized the legality of captive-audience meetings, *see Babcock & Wilcox Co.*, 77 N.L.R.B. 577 (1948), the Memo stated that Abruzzo would "ask the Board to reconsider current precedent on mandatory meetings in appropriate cases." Memo, R.1-1 at PageID 33.[3]

Associated Builders and Contractors of Michigan (ABC Michigan), a trade association representing employers, took exception to the Memo. It filed a complaint in federal district court, claiming that the Memo amounted to an unconstitutional threat of prosecution. Specifically, ABC Michigan alleged that publishing the Memo was an *ultra vires* act in violation of the First Amendment. The district court dismissed ABC Michigan's complaint because the court lacked subject-matter jurisdiction and ABC Michigan lacked standing. On appeal, ABC Michigan asks this court to vacate the district court's judgment and order the General Counsel to remove the Memo from the Board's website.

Because ABC Michigan does not have standing to pursue its claims, we **AFFIRM** the district court's judgment.

## I.

Congress enacted the NLRA to "encourag[e] the practice and procedure of collective bargaining" and "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." *NLRB v. Piqua Munising Wood Prods. Co.*, 109 F.2d 552, 556 (6th Cir. 1940) (quoting 29 U.S.C. § 151). Section 7 of the NLRA protects employees' rights to participate in labor organizations and bargain collectively,

---

[3] The Board recently overruled *Babcock* and held that "an employer interferes with employees' decision whether to exercise their [rights under the NLRA] when it compels employees to attend a captive-audience meeting on pain of discipline or discharge." *Amazon.com Servs., Inc.*, 373 NLRB No. 136, 2024 WL 4774441, at *1 (Nov. 13, 2024).

while Section 8 prohibits employers and unions from engaging in unfair labor practices. *See Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 775 (2023) (citing 29 U.S.C. §§ 157, 158).

Under the original terms of the NLRA, the Board had "plenary authority over all aspects of unfair labor practice disputes," including their prosecution and adjudication. *NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 117 (1987) (hereinafter *UFCW*). But in 1947, Congress divided the Board's prosecutorial and adjudicatory functions between two entities. *Id.* at 117–18. The General Counsel was assigned "all prosecutorial functions," while the Board retained "all adjudicatory functions." *Beverly Health & Rehab. Servs., Inc. v. Feinstein*, 103 F.3d 151, 152 (D.C. Cir. 1996). Now, the administrative process begins when a private party—an employee, employer, or union—files a charge with a regional office under the General Counsel's supervision. *UFCW*, 484 U.S. at 118; 29 U.S.C. § 153(d). The regional office investigates the charge, and if the charge has merit, issues a complaint against the offending party. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 343 (2024). The complaint "triggers adjudicatory proceedings within the agency, first before an administrative law judge, and then before the Board itself." *Id.* (citing 29 U.S.C. §§ 160(b), (c); 29 C.F.R. §§ 101.10–101.12). The General Counsel has "final authority" with respect to (1) the investigation of charges, (2) the issuance of complaints, and (3) the prosecution of complaints. 29 U.S.C. § 153(d).

In April 2022, Abruzzo issued the Memo to all NLRB regional directors, officers-in-charge, and resident officers. She also published it on the NLRB website. The Memo argued that captive-audience meetings "inherently involve an unlawful threat that employees will be disciplined or suffer other reprisals if they exercise their protected right not to listen to" their employer's speech. Memo, R.1-1 at PageID 31. In Abruzzo's view, employer-led meetings about union activity must be "truly voluntary." *Id.* at PageID 33.

But Abruzzo recognized that she could not unilaterally prohibit captive-audience meetings, as they were permitted under the Board's then-controlling precedent. *See Babcock*, 77 N.L.R.B. at

579. So Abruzzo wrote that she would "urge" the Board to reconsider *Babcock*, which she described as "an anomaly in labor law." Memo, R.1-1 at PageID 31–32. Specifically, she would ask the Board to "reconsider current precedent" and "adopt sensible assurances" that employers must give to employees before meetings about union representation. *Id.* at PageID 33.

In March 2023, ABC Michigan filed a complaint against Abruzzo in her official capacity as General Counsel. ABC Michigan is a "statewide trade association representing the commercial and industrial construction industries." Complaint, R.1 at PageID 6, 17. Its members include employers who believe in the "Merit Shop philosophy," which it describes as support for "neutrally balanced labor law legislation that embraces fair play for *both* employer and employee." *Id.* at PageID 17. ABC Michigan's members purportedly interpreted the Memo as "a threat to intimidate employers" by (1) intimating that employers would be prosecuted if they held captive-audience meetings, (2) "declaring open season" for unions to bring charges against employers so that Abruzzo could persuade the Board to overturn *Babcock*, and (3) coercing employers to "adopt" Abruzzo's preferred approach to meetings about unionization. *Id.* at PageID 18–19. In short, ABC Michigan alleged that the Memo violated its members' free speech rights by compelling, regulating, and restraining their speech. ABC Michigan requested an injunction that would require Abruzzo to remove the Memo from the NLRB website.

Abruzzo moved to dismiss the complaint for lack of subject-matter jurisdiction and for failing to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). First, Abruzzo claimed that the NLRA precludes district courts from enjoining NLRB procedures and reviewing the General Counsel's prosecutorial discretion. Second, Abruzzo noted that there was no judiciable controversy because ABC Michigan lacked standing (i.e., its members suffered no concrete injury) and the case was not ripe for review (i.e., the Memo was neither binding nor final). Third, Abruzzo argued that there was no constitutional violation because the First Amendment "grants the right to speak, not to force others to listen." Mot. to Dismiss, R.16-1 at PageID 173.

After a hearing, the district court dismissed ABC Michigan's complaint. First, the court concluded that it lacked subject-matter jurisdiction over ABC Michigan's claims because the Memo was not an "*ultra vires* act," but rather a valid and unreviewable exercise of the General Counsel's statutory authority. Second, the court determined that ABC Michigan did not have standing because its members did not suffer a concrete injury, and even if they did, the requested relief would not redress that injury. The court declined to address whether ABC Michigan alleged a viable First Amendment claim.

ABC Michigan timely appealed.

**II.**

This court reviews a district court's determination that a plaintiff lacks standing de novo. *See Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023). Because the motion to dismiss was a "facial attack" on the complaint—it attacked the sufficiency of the pleading without raising a factual controversy—the district court must "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The court must also "construe the complaint in favor of the complaining party." *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). But "'a legal conclusion couched as a factual allegation' need not be accepted." *Hile*, 86 F.4th at 273 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, our standing inquiry is "especially rigorous" when the merits of the case require the court to decide whether another branch of government violated the Constitution. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted); *see also Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) (applying the "particularly rigorous" standard to a claim that a federal agency chilled the plaintiff's First Amendment rights).

## III.

Federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). Rather, the Constitution only permits federal courts to adjudicate genuine "Cases" and "Controversies." *California v. Texas*, 593 U.S. 659, 668 (2021) (citing U.S. Const. art. III, § 2). A case or controversy is genuine if the plaintiff has a "personal stake" in the dispute. *All. for Hippocratic Med.*, 602 U.S. at 379 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). In other words, a plaintiff must have standing.

To establish standing, plaintiffs ordinarily must show that (1) they suffered a concrete and particularized "injury in fact" that is actual or imminent; (2) their injury is "fairly traceable" to the challenged action by the defendant; and (3) their injury will likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). But this case comes with an added wrinkle: ABC Michigan's claims are based on "associational standing." That is, ABC Michigan is suing on behalf of its members. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 537 (6th Cir. 2021). To establish associational standing, ABC Michigan must show that (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 537. The parties focus on the first element: whether at least one of ABC Michigan's members would have standing on its own. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (noting that the first *Hunt* element requires "at least one member with standing").

The Supreme Court has repeatedly emphasized that an Article III injury must be "actual or imminent, not speculative." *All. for Hippocratic Med.*, 602 U.S. at 381; *see also Clapper*, 568 U.S.

at 409; *Lujan*, 504 U.S. at 560. This means that the injury "must have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381. A future injury is sufficient to confer standing if it is "certainly impending" or if there is a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

ABC Michigan alleges that the Memo constitutes a threat of prosecution and chills its members' free speech rights. This raises the "recurring issue" of whether the threatened enforcement of a law satisfies the injury in fact requirement. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024) (citation omitted). Under our precedent, a threat of enforcement implicating free speech—i.e., a First Amendment chill—is a sufficiently "imminent" injury when (1) the plaintiff intends to engage in expression that is arguably protected by the Free Speech Clause, (2) the expression is arguably proscribed by the law in question, and (3) the plaintiff faces a "credible threat of enforcement" for engaging in that expression. *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024) (citation omitted); *see also Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (collapsing the first two requirements).

Here, the first element is dispositive: ABC Michigan did not sufficiently allege that its members intended to engage in expression arguably protected by the First Amendment. Specifically, the complaint failed to establish that any of ABC Michigan's members had a concrete plan to hold a captive-audience meeting.

Under *Twombly*'s plausibility test, a complaint must "clearly . . . allege facts demonstrating" standing. *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543 (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (noting that a plaintiff must plead the components of standing "with specificity" (citation omitted)). For claims of First Amendment chill, "vague suggestions of a *general* desire" to engage in the allegedly-chilled speech are insufficient. *Fieger*

*v. Mich. Sup. Ct.*, 553 F.3d 955, 964 (6th Cir. 2009) (holding that plaintiffs lacked standing because they made "no attempt to articulate, with *any* amount of specificity, their intended speech or conduct"); *see also Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264, 269 (3d Cir. 2020) (recognizing that "generalized allegations of chilled speech cannot establish an existing injury," and thus a plaintiff "must claim a specific present objective harm or a threat of specific future harm" (internal quotation marks omitted)).

ABC Michigan's complaint made only a passing reference to its members' future intent. It alleged that "[b]ut for Abruzzo's threat of prosecution . . . ABC Michigan employer members would engage in lawful free speech and express to their employees their views, argument, or opinion on unionization during mandatory work meetings." Complaint, R.1 at PageID 19. But the complaint did not state that its members held captive-audience meetings in the past. *See Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) (concluding that a plaintiff established an intent to engage in arguably-protected conduct because he previously engaged in the conduct and intended to do so in the future). Nor did it describe any specific plans to hold captive-audience meetings in the future. *See Driehaus*, 573 U.S. at 161–62 (holding that allegations of "specific statements" that the plaintiffs intended to make were sufficient to show an intent to engage in that speech). Without more, ABC Michigan's conclusory statement is a "blanket assertion" unsupported by "any corresponding facts." *Birmingham v. Nessel*, No. 21-1297, 2021 WL 5712150, at *2 (6th Cir. Dec. 2, 2021). Thus, the complaint failed to sufficiently allege that any of ABC Michigan's members had a specific plan to engage in conduct that implicates the First Amendment. *See Driehaus*, 573 U.S. at 159.

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before [the agency] has actually commenced an enforcement proceeding against him." *Kiser*, 765 F.3d at 607. Because ABC Michigan did not satisfy the injury in fact requirement for constitutional standing, the district court properly dismissed the complaint for lack of standing. *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at

535, 545–47 (affirming the district court's dismissal of the complaint after concluding that the plaintiff did not sufficiently allege an injury in fact).

**IV.**

Because we conclude that ABC Michigan lacked standing, we need not address whether the NLRA deprived the district court of subject-matter jurisdiction. *See In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (explaining that this court has "discretion to address jurisdictional issues in any sequence we wish" (internal quotation marks omitted)). We express no opinion on the merits of ABC Michigan's First Amendment claims. We **AFFIRM** the district court's judgment.